**Malika SAYLAB, et al., Plaintiffs,**

v.

**DON JUAN RESTAURANT, INC., et al., Defendants.**

**No. CIV.A. 02–454(RMC).**

United States District Court, District of Columbia.

Aug. 19, 2004.

---

Quentin R. Corrie, Birch, Stewart, Kolasch & Birch, LLP, Falls Church, VA, for Plaintiffs.

Bryan Perilman, Dross, Levenstein, Perilman & Kopstein, Seabrook, MD, James Russell Schraf, Lipshultz & Hone, Chartered, Silver Spring, MD, John Jude Hathway, Whiteford, Taylor & Preston, L.L.P., Allen Hutter, Washington, DC, for Defendants/Cross–Claimants.

## MEMORANDUM OPINION

COLLYER, District Judge.

This case concerns insurance coverage and complements a liability suit that is pending in the Superior Court of the District of Columbia. The plaintiffs are Malika, Mumtaz, Haydathaulla and Ahmad Saylab (collectively, "Saylabs" or "Saylab family"), who lost two relatives, Sarvanna and Salma Saylab, in a traffic accident on August 2, 1998. The complaint alleges that Oscar Flores, after being served alcoholic beverages at Don Juan Restaurant, Inc. ("Don Juan") and/or El Tipico Restaurant, Inc., drove his car on the wrong side of a highway and collided head-on with a vehicle carrying Salma, Sarvanna, Malika and Ahmad Saylab.[1] The Saylabs seek, *inter alia,* to hold Don Juan responsible for the fatal crash on the grounds that the restaurant failed to supervise and train its employees, who allegedly permitted Mr. Flores to consume alcohol to the point of inebriation and then to operate a motor vehicle.

In the instant case, Don Juan requests a judicial declaration that an insurance policy issued by Harford Mutual Insurance Company ("Harford") provides coverage and indemnification for all of the Saylab family's claims against the restaurant.[2] In the alternative, Don Juan and the Saylabs ask the Court to declare that Don Juan's insurance broker, Associated Insurance Management, Inc. ("Associated"), breached tort and contract duties by not apprising Luis Alberto Ferrufino, Don Juan's owner, of the availability of liquor liability coverage for his restaurant. Don Juan, Harford, and Associated have submitted Motions for Summary Judgment on these two overarching issues.[3]

## I. Background

"The first insurance policy issued to [Don Juan] by Harford was in March 1994."[4] St. of Mat. Facts in Supp. of Harford's Mot. for Summ. J. ¶ 5. Alberto Ferrufino and his wife acquired Don Juan in that same year, following the death of the prior owner. Don Juan asserts that Mr. Ferrufino had no experience operating a restaurant in the District of Columbia, and "only [a] moderate ability to speak English, and little ability to read or write in English." Mem. of Pts. & Auths. of Def. Don Juan Rest., Inc. at 5. According to Don Juan, Mr. Ferrufino "merely continued the existing commercial general liability insurance policies in place at Don Juan Restaurant when he purchased the restaurant in 1994." *Id.* With respect to the renewal of policies and payment of

---

1. Malika and Ahmad Saylab survived the incident, but allegedly sustained serious injuries.

2. As explained below, Don Juan is a titular defendant in this action but is more actively a cross-plaintiff.

3. The parties appear to agree that the law of the District of Columbia controls and cite

cases from this local jurisdiction when available.

4. "The policy prior to the Harford policy in effect for Don Juan was issued through Scottsdale Insurance Company." St. of Mat. Facts in Supp. of Harford's Mot. for Summ. J. ¶ 6.

premiums, Mr. Ferrufino dealt with Jon Nosarino, a broker who is no longer with Associated, and Gloria Groover, another Associated employee. He began working with Judith Myers in January 2001. "Other than sending renewal notices to ... Associated and/or [Ms.] Myers, Mr. Ferrufino did not have any discussions about insurance coverage or lack of coverage." Don Juan's Mem. in Supp. of Mot. for Summ. J. at 12–13.

As of August 2, 1998, when Oscar Flores allegedly crashed into the Saylab family's automobile, the Harford insurance policy in effect was dated March 26, 1998, to March 26, 1999 ("Policy"). The Policy consisted of four coverage parts: commercial property, commercial general liability ("CGL"), commercial crime, and commercial inland marine. The CGL form was broken up into five sections: Section I described coverages for bodily injury and property damage, personal or advertising injury liability, and medical payments; Section II identified who was an insured; Section III specified limits of insurance; Section IV listed CGL conditions; and Section V provided definitions of key terms. The general aggregate limit of insurance (other than products/completed operations) was $2,000,000, and the aggregate limit of insurance for products/completed operations was $1,000,000.

Also included in the CGL policy under Section I were exclusions; as relevant here, the policy specifically stated that insurance did not apply to:

c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

CGL Coverage Form at 1 of 11, Harford's Mot. for Part. Summ. J. Ex. 3.

In addition, the Policy had an endorsement entitled "Products/Completed Operations Hazard Redefined" ("Endorsement"). The Endorsement specifically stated that it "modifie[d] insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART [and] PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART[.]" Endorsement, Harford's Mot. for Part. Summ. J. Ex. 3. In Section V, the Policy had originally defined the term "products/completed operations hazard" to "[i]nclude[ ] all 'bodily injury' and 'property damage' occurring *away from premises you own or rent* and arising out of 'your product' or 'your work' except: (1)[p]roducts that are still in your physical possession; or (2)[w]ork that has not yet been completed or abandoned ...." CGL Coverage Form at 10 of 11, Harford's Mot. for Part. Summ. J. Ex. 3 (emphasis added). The Endorsement modified the Policy to read:

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph a. of the definition of "Products—completed operations hazard" in the DEFINITIONS Section is replaced by the following: "Products—completed operations hazard":

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

Endorsement, Harford's Mot. for Part. Summ. J. Ex. 3. The schedule as listed on the Endorsement provided, "Description of Premises and Operations: # 16816—RESTAURANTS—WITH SALES OF ALCOHOLIC BEVERAGES THAT ARE LESS THAN 75% OF THE TOTAL ANNUAL RECEIPTS OF THE RESTAURANTS—WITHOUT DANCE FLOOR[.]" *Id.*

By letter dated October 1, 2001, Harford denied coverage for the Saylabs' claims against Don Juan. Harford opined that the liquor liability exclusion controlled and that the Endorsement "simply change[d] the definition of the products/completed operations hazard as stated in Section V—Definitions." Harford's Mot. for Summ. J. Ex. 8 at 2. Subsequently, the Saylab family brought this declaratory judgment action in D.C. Superior Court against Harford, Associated, Don Juan, and Mr. Ferrufino. Harford and Associated removed the case to federal court. Mr. Ferrufino was voluntarily dismissed, and this Court found that the Saylab family had no standing to sue Harford but allowed Don Juan to advance the same coverage claim. Because factual questions remained to be developed and answered, the Court allowed the Saylabs and Don Juan to continue their claims against Associated. The Court ordered two distinct rounds of summary judgment motions, the first limited to the interpretation of the Policy and the second to address claims of negligence and breach of contract.

## II. Legal Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This procedural device is not a "disfavored legal shortcut" but a fair and efficient method of resolving cases expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court must view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994).

Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... [S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## III. Analysis

Pending before the Court are four dispositive motions:

First, Harford filed a Motion for Partial Summary Judgment, to which Don Juan filed its opposition, and Harford filed a reply. Harford also submitted a Surreply Regarding Harford's Corporate Designee.[5]

5. When the Harford Reply was filed, Har- ford's corporate designee had not been de-

These briefs examine the scope of insurance coverage under the Policy issued by Harford to Don Juan.

Next is the Motion of Defendant[ ] Associated Insurance Management, Inc. for Summary Judgment, which Don Juan and the Saylabs both oppose and to which Associated filed a reply. The primary issue is whether Associated had a contractual or tort duty to give Don Juan advice on the procurement of liquor liability coverage.

The third motion is Harford's Motion for Summary Judgment, which rounds out its original motion. In relevant part, this supplemental motion contests Don Juan's claims that any alleged negligence on the part of Associated may be imputed to Harford. Don Juan filed its opposition and Harford submitted a reply.

Finally, Don Juan filed a Motion for Summary Judgment, which is opposed in the briefs listed above. Since the issues and arguments of the parties are the same, Don Juan's motion will be addressed in conjunction with the other dispositive motions.[6]

### A. Scope of Coverage

Harford first moves for summary judgment on the grounds that the Policy's liquor liability exclusion removed from coverage any liability Don Juan might be found to have for the Saylab family's tort claims. There is no dispute that the allegations against Don Juan in the underlying negligence suit arose out of the business of selling and serving alcoholic beverages. Don Juan contends that no valid, enforceable liquor liability exclusion was in effect as a result of the Endorsement issued by Harford. *See* Opp. of Def. Don Juan Rest., Inc. to Def. Harford's Mot. for Part. Summ. J. at 2.

As a stand-alone provision of the Policy, the liquor liability exclusion is unambiguous and might easily defeat Don Juan's declaratory judgment claim against Harford. *See Interstate Fire & Cas. Co., Inc. v. 1218 Wisconsin, Inc.,* 136 F.3d 830, 833 (D.C.Cir.1998). However, Don Juan argues that the Endorsement (covering defective products or operations) provided coverage for all bodily injury and property damage arising out of the restaurant's sale of alcohol. Furthermore, Don Juan contends that the Endorsement trumped the liquor liability exclusion. Therefore, under Don Juan's theory, the exclusion was meaningless and did not limit the scope of coverage.

■ Harford asserts that the liquor liability exclusion was in effect during the relevant time period despite the Endorsement. In support, Harford cites a number of cases in which it has been determined that an endorsement for the purpose of "products/completed operations hazard redefined" (or similar changes) does not invalidate a liquor liability exclusion: *B.L.G. Enterprises, Inc. v. First Financial Insurance Co.,* 334 S.C. 529, 514 S.E.2d 327 (1999); *Continental Western Insurance*

---

posed. Harford's surreply notes relevant testimony of that witness. It is accepted for filing by the Court without objection from Don Lee.

**6.** Because Don Juan retained new counsel part way through discovery in this case, it filed a Motion for Summary Judgment that argues both coverage and agency issues, in response to Harford's Motion for Partial Summary Judgment on the coverage issue alone. Consequently, Harford moved to strike Don Juan's dispositive motion. The Court has considered Don Juan's arguments concerning insurance coverage in conjunction with Harford's Motion for Partial Summary Judgment and has reviewed Don Juan's arguments concerning the alleged agency relationship between Harford and Associated in conjunction with Harford's and Associated's motions on the negligence and agency issues. The Motion to Strike will be denied as moot.

*Co. v. Dam Bar,* 478 N.W.2d 373 (N.D. 1991); *Exchange Insurance Co. v. Mar–Fran Enterprises, Inc.,* 169 Ariz. 187, 818 P.2d 172 (1991); *State Automobile Insurance Association v. Young Men's Republican Club,* 663 F.Supp. 1077 (W.D.Pa.1987); and *Paradigm Insurance Co. v. Texas Richmond Corp.,* 942 S.W.2d 645 (Tex. App.1997).

Don Juan attempts to distinguish these cases from the instant action, although it cites no cases that support the proposition that a change in this type of definition overrides an explicit exclusion. In particular, Don Juan argues that the Endorsement here specifically "modifie[d] insurance provided under ... *two* parts of the policy": CGL coverage and products/completed operations liability coverage.[7] Opp. of Def. Don Juan Rest., Inc. to Def. Harford's Mot. for Part. Summ. J. at 3 (emphasis added). Don Juan explains its understanding of the Endorsement:

> By referring in the Endorsement to two separate parts of coverage, only one of which contains a definition that is being redefined, the insurer explicitly acknowledges that there is a separate commercial general liability coverage part containing an exclusion. Furthermore, by including a specific reference to the Commercial General Part, the insurer had to intend on modifying the coverage therein granted and in particular modifying the exclusion.

*Id.* at 4.

The Court declines to adopt Don Juan's reading of the Policy. As stated on the first page of the Policy, Don Juan purchased four types of coverage (commercial property, CGL, commercial crime, and commercial inland marine) and each demanded a different premium. Despite the

language of the Endorsement, there was no separate "part" of the Policy to cover products/completed operations. Claims for defective products/completed operations fell within CGL coverage, which also contained the liquor liability exclusion. *See Paradigm Ins. Co.,* 942 S.W.2d at 652 ("[C]overage for hazards arising out of Products/Completed Operations is merely a part of the coverage provided under the Commercial General Liability Coverage."). Indeed, the products/completed operations aggregate limit of insurance was listed on the declarations page of the CGL coverage part.

Don Juan asserts that other portions of the Endorsement also evinced an intent to provide insurance coverage for liability arising from the sale of alcoholic beverages. According to Don Juan,

> The man in the street would ... read a description of the premises and operations to which the Endorsement applies—a restaurant with sales of alcoholic beverages that are less than 75% of the total annual receipts of the restaurant. Then the insured would effectively read that: ["]with respect to 'bodily injury' or 'property damage' arising out of 'your products' manufactured, sold, handled or distributed: (1) On, from or in connection with the use of any premises described in the Schedule, or (2) in connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf." That certainly sounds like coverage for injury or damage caused by serving food and/or alcohol!

Don Juan's Mem. in Supp. of Mot. for Summ. J. at 10–11. This misconstrues the ambit and purpose of the Endorsement,

---

**7.** The Endorsement stated that it modified insurance provided under the Commercial General Liability Coverage Part and the Products/Completed Operations Liability Coverage Part. *See* Endorsement, Harford's Mot. for Part. Summ. J. Ex. 3.

which merely expanded (for the insured's benefit) the definition of the term "products/completed operations hazard" in Paragraph 14a of Section V of the CGL Coverage Form. As relevant, Paragraph 14a initially stated that the term "[i]nclude[d] all 'bodily injury' and 'property damage' occurring *away from premises* you own or rent and arising out of 'your product' or 'your work' ...." CGL Coverage Form at 10 of 11, Harford's Mot. for Part. Summ. J. Ex. 3 (emphasis added). This language would clearly cover Don Juan's potential liability to the Saylab family, except for the liquor liability exclusion. The Endorsement merely changed Paragraph 14a so that the definition of "[p]roducts—completed operations hazard ... [i]nclude[d] all 'bodily injury' and 'property damage' that [arose] out of 'your products' if the 'bodily injury' or 'property damage' occur[red] *after you have relinquished possession* of those products." Endorsement, Harford's Mot. for Part. Summ. J. Ex. 3 (emphasis added). As with the original version of Paragraph 14a, no reference to the liquor liability exclusion was made. With the Endorsement, the Policy provided coverage for bodily injury and property damage occurring on the premises. This change in Paragraph 14a of Section V had no bearing on the viability of the liquor liability exclusion in Section I, any more than the original Paragraph 14a negated the exclusion. *See B.L.G. Enters.*, 334 S.C. at 539, 514 S.E.2d 327 (The Endorsement "simply redefines 'product hazard.'").

Harford's Motion for Partial Summary Judgment on the issue of coverage will be granted and Don Juan's Cross Motion for Summary Judgment on this same issue will be denied.

## B. Associated's Duties

The second issue addressed by the parties is whether Associated owed the Say-labs or Don Juan a legal duty to advise Don Juan about liquor liability insurance. *See* Don Juan's Mem. in Supp. of Mot. for Summ. J. at 17 ("[M]ay an insurer or its agent remain passive (negligent in renewing the policy), when it actually knew that the insured (who was in the business of selling alcohol at its restaurant) did not have liability coverage and knew further that the restaurant could be held liable for persons injured by a patron who earlier drank alcohol at the restaurant?").

### 1. Associated's Duty to the Saylabs

■ Associated cites *Jones v. Hyatt Insurance Agency, Inc.*, 356 Md. 639, 741 A.2d 1099 (1999), for the notion that "[a]n insurance agent owes no duty to its insured's tort victims." Mem. of Pts. & Auths. in Supp. of Mot. of Def.[ ] Assoc. Ins. Mgmt., Inc. for Summ. J. at 11. *Hyatt Insurance Agency* was

> an action by tort claimants against an insurance agency based upon the agency's negligent failure to procure motor vehicle liability insurance for its client[,] ... whose employee was involved in a motor vehicle accident .... [T]he tort claimants sued the insurance agency in contract as third-party beneficiaries of the contract to procure liability insurance and in tort for negligent failure to procure the insurance.

*Hyatt Ins. Agency*, 741 A.2d at 1100. The Maryland Court of Appeals held that the "tort claimants had no viable direct cause of action in tort against the insurance agency because the agency owed them no duty independent of the contract." *Id.* The Court of Appeals reasoned:

> "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability...." In the case at bar, the [tort claimants] incurred "a risk of economic

loss only" as a result of [the insurance agency's] negligent breach of contract [to obtain coverage for its client]. The [tort claimants'] personal injuries did not result from [the agency's] negligence but were caused by the negligence of [its client's] employee. The only injury possibly incurred by the [tort claimants] as a result of [the agency's] negligence is that their judgment against [the client] may not be satisfied. This is economic loss only.

*Id.* at 1109 (quoting *Jacques v. First Nat'l Bank,* 307 Md. 527, 515 A.2d 756, 759–60 (1986)). The Court of Appeals concluded that an "intimate nexus" or "direct relationship" did not exist between the tort claimants and the insurance agency because, "[a]t the time of the contract between [the agency and its client], the [tort claimants] were not even identified third-party beneficiaries of that contract." *Id.*

In opposition, the Saylabs argue that this Court already decided this issue in their favor:

While the harm to Don Juan may be an economic loss only, it is clear that the Saylab family suffered personal injury as well. Whether that loss to the Saylabs was foreseeable as a result of these defendants' alleged torts, and whether these defendants had an enforceable duty of care to the Saylabs, who are not parties to the insurance contract, cannot be determined at this stage in the litigation.

*Saylab v. Don Juan Restaurant, Inc.,* No. 02–454(RMC), Mem. Op. (May 15, 2003). They also criticize the analysis in *Hyatt Insurance Agency,* asserting that the decision "ignored the language and policy of *Jacques.*" Mem. of Pts. & Auths. in Opp. to Mot. of Def.[ ] Assoc. Ins. Mgmt., Inc. for Summ. J. at 3. Finally, the Saylab family contends that a municipal court in the District of Columbia "would follow the decision of [*Caldwell v. Bechtel, Inc.,* 631 F.2d 989 (D.C.Cir.1980) ], as well as the public policy reasons behind the District's Alcoholic Beverage Control Act and cases construing it." Mem. of Pts. & Auths. in Opp. to Mot. of Def.[ ] Assoc. Ins. Mgmt., Inc. for Summ. J. at 3–4.

The Saylabs are indeed correct that this Court in an earlier opinion implied that they have suffered personal injury from Associated's alleged negligence. Upon review of *Hyatt Insurance Agency* and the parties' briefs on summary judgment, however, the Court concludes that any injury to the Saylab family caused *by Associated* would constitute economic loss. As with the parties in *Hyatt Insurance Agency,* the harm to the Saylabs arising out of Associated's failure to provide Don Juan with guidance regarding liquor liability "is that their [potential] judgment against [Don Juan and the driver] may not be satisfied." *Hyatt Ins. Agency,* 741 A.2d at 1109. Associated's alleged negligence played no role in the awful traffic accident, which is the event that directly caused the Saylabs' personal injury.

■ The Saylab family's argument that the Maryland Court of Appeals incorrectly applied its own precedent in deciding *Hyatt Insurance Agency* is unavailing. *Hyatt Insurance Agency* unequivocally held that an insurance agency did not breach a tort duty to the victims of a traffic accident even though the agency may have failed to acquire car insurance for the perpetrator of the accident. *See id.* ("[The agency's] breach of their contract with [its client] violated no tort duty owed to the [tort claimants]."). There are no cases known to the Court or cited by the Saylabs indicating that this statement is no longer good law in Maryland (or the District of Columbia), regardless of whether it is fully consistent with *Jacques.* The common law of Maryland is "the source of

the District's common law and an especially persuasive authority when the District's common law is silent[.]" *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C.1983); *see also* D.C.Code § 45–401.

The law in the District of Columbia is not contrary to *Hyatt Insurance Agency*. The Saylab family cites *Caldwell* and D.C.Code § 25–121 (which prohibits the sale of alcoholic beverages to minors or intoxicated persons) to support its contention that local courts would impose a tort duty on Associated in favor of the Saylabs. In *Caldwell*, a heavy equipment operator who allegedly contracted silicosis while working in a subway tunnel sued an engineering firm that had been hired to provide safety engineering services. The operator's employer and the engineering firm had separate contracts with the subway system, but there was no contract between the operator's employer and the engineering firm. The main issue was

> whether the contractual authority vested in [the engineering firm] with respect to job safety regulations created a special relationship between [the engineering firm] and [the operator] under which [the engineering firm] owed a duty to [the operator] to take reasonable steps to protect him from the foreseeable risk to his health posed by the dust laden Metro tunnels.

*Caldwell*, 631 F.2d at 993. The D.C. Circuit concluded that the engineering firm owed a tort duty to the operator, despite the absence of privity of contract, in part because the engineering firm was responsible for ensuring that contractors complied with all relevant safety codes, rendering the operator a foreseeable plaintiff.

The decisions in *Caldwell* and *Hyatt Insurance Agency* are compatible and do not lead to different results as applied in the instant case. Unlike the tort claimants in *Hyatt Insurance Agency*, the operator in

*Caldwell* sustained personal—not economic—injury due to alleged negligence. The D.C. Circuit determined that the engineering firm owed the operator a tort duty by examining whether he was "one who might foreseeably be injured by the defendant's conduct." *Id.* at 998. The Maryland Court of Appeals would agree with this analysis. *See Hyatt Ins. Agency*, 741 A.2d at 1109 ("[W]here the risk created is one of personal injury ... the principal determinant of duty becomes foreseeability."). *Caldwell* therefore does not lessen the persuasiveness of *Hyatt Insurance Agency* where, as here, a negligence claim involves purely economic injury.

The fact that the District of Columbia has a legislative policy expressed in dram shop legislation does not lead the Court to find a tort duty in this particular context. It is well established that D.C.Code § 25–121 has a public safety purpose. *Jarrett v. Woodward Bros., Inc.*, 751 A.2d 972 (D.C. 2000); *Rong Yao Zhou v. Jennifer Mall Rest., Inc.*, 534 A.2d 1268 (D.C.1987). The Saylab family asserts that a "violation of an ordinance intended to promote safety can give rise to a negligence action." *Jarrett*, 751 A.2d at 977 (internal quotation marks omitted). This is certainly the general rule in the District of Columbia, but the Saylabs fail to observe its parameters. Both *Jarrett* and *Rong Yao Zhou* addressed the tort liability of tavern keepers who allegedly violated D.C.Code § 25–121 by serving visibly-intoxicated patrons, not insurance agents who did not offer added insurance against drunk drivers. These cases might be relevant in the Saylab family's negligence action *against Don Juan;* however, they do not speak to the issue at hand: whether Associated, as an insurance agent, owed a duty of reasonable care to the Saylabs. *Jarrett* teaches that a "breach of [the] statutory standard [in D.C.Code § 25–121(b)] creates *tavern*

*keeper* liability to innocent third-parties, who come within the protection of the statute." *Jarrett,* 751 A.2d at 980 (citing *Rong Yao Zhou,* 534 A.2d at 1275) (emphasis added). The Saylabs do not allege that Associated violated D.C.Code § 25–121; an insurance agency is just not " 'a person upon whom the statute imposes specific duties.' " *Id.* (quoting *Marusa v. District of Columbia,* 484 F.2d 828, 833–34 (D.C.Cir.1973)).

In light of these precedents, it seems likely that District of Columbia courts would find, as a matter of law, that Associated did not owe a tort duty to the Saylabs. Associated's alleged negligence created "a risk of economic loss only"—*i.e.,* a risk that the Saylabs would be unable to collect any monetary judgment entered against Don Juan. *Hyatt Ins. Agency,* 741 A.2d at 1109. The Saylabs do not allege that Associated in any way contributed to the tragic automobile crash. Without evidence showing an "intimate nexus" between Associated and the Saylabs, there is no basis on which to impose a tort duty in this situation. Accordingly, the Saylab family's negligence claim against Associated cannot succeed.

### 2. Associated's Duty to Don Juan

■ A related, but somewhat murkier, issue is whether Associated owed Don Juan a specific contract or tort duty to inform the restaurant about the existence of liquor liability coverage.[8] Associated argues that summary judgment is appropriate here because "[Mr.] Ferrufino gave no express coverage requests to [Associat-

ed]" and Associated had no legal duty to initiate such a dialogue absent a special relationship. Mem. of Pts. & Auths. in Supp. of Mot. of Def.[ ] Assoc. Ins. Mgmt., Inc. for Summ. J. at 13.

It is conceded that Associated was not under any express contractual obligation to notify Don Juan about liquor liability insurance. There was no formal agreement between these parties and Don Juan acknowledges that it never requested insurance coverage for liquor liability. Mem. of Pts. & Auths. of Def. Don Juan Rest., Inc. at 5 ("Other than sending renewal notices to ... Associated and/or [Ms.] Myers, Mr. Ferrufino did not have any discussions about insurance coverage or lack of coverage until after the present lawsuit occurred."). Instead, Associated's purported duty to advise emanated from the duty of reasonable care to which all insurance agents must adhere. *Id.* at 11 ("An insurance agent is under a duty to exercise such reasonable care and skill as is expected of an insurance agent acting under similar circumstances." (citing *Morrison v. MacNamara,* 407 A.2d 555, 560–61 (D.C.1979))); *see also Hyatt Ins. Agency* at 1108 (" 'An insurance agent must exercise reasonable care and skill in performing his duties' and that agent may become liable in tort to the principal who suffers 'a loss by [the agent's] failure to use standard care.' " (quoting *Popham v. State Farm Mut. Ins. Co.,* 333 Md. 136, 634 A.2d 28, 36 (1993))).

Associated relies heavily on *Sadler v. Loomis Co.,* 139 Md.App. 374, 776 A.2d 25

---

**8.** The Saylab family's breach of contract claim against Associated is dependent on the success of Don Juan's breach of contract claim. The Saylabs assert that they "are third-party beneficiaries of the brokerage agreement between Associated and Don Juan and have [the] right to sue on the contract as a donee beneficiary on the contract to procure insurance." Mem. of Pts. & Auths. in

Opp. to Mot. of Def.[ ] Assoc. Ins. Mgmt., Inc. for Summ. J. at 9. "[A]s a matter of general law[,] a third-party beneficiary stands in the shoes of the promisee and is subject to all defenses that might have been asserted against the promisee." *Chiriboga v. Int'l Bank for Reconstr. & Dev.,* 616 F.Supp. 963, 967 n. 3 (D.D.C.1985).

(2001), in arguing that "the ordinary agency relationship between the agent or broker and the insured" does not implicate a duty to advise. Mem. of Pts. & Auths. in Supp. of Mot. of Def.[ ] Assoc. Ins. Mgmt., Inc. for Summ. J. at 28. According to Associated, *Sadler* held that, "in the absence of a special relationship, an insurance agent or broker has no affirmative, legally cognizable tort duty to provide unsolicited advice to an insured regarding the types of coverage available or the adequacy of limits of coverage." *Id.* at 15. This reading, however, is too broad and fails to reconcile *Popham,* a case discussed (and distinguished) in *Sadler* itself.

*Sadler* involved a traffic accident in which a motorcyclist's leg was injured and later had to be amputated. The motorcyclist sued the driver of the other vehicle in the accident, seeking $10,000,000. At the time, the defendant had an automobile liability insurance policy providing maximum coverage of only $100,000; she "was woefully underinsured." *Sadler,* 776 A.2d at 27. The defendant eventually settled her case with the motorcyclist for $1,000,000, well above the policy limit. Thereafter, she instituted a negligence suit against her insurance agency alleging that it "failed to provide her with periodic quotes as to the cost of additional protection, or sufficient information to enable her to make an informed decision as to an appropriate level of liability coverage." *Id.* The Maryland Court of Special Appeals disagreed, concluding that the insurance agency "did not have a continuing, affirmative tort duty to render unsolicited advice to [the insured] concerning the advisability or availability of liability coverage in a greater amount

than was selected by [the insured]." *Id.* From this, Associated argues that it owed no duty to apprise Don Juan of the possibility of liquor liability insurance.

*Sadler* provides minimal guidance here because it only dealt with the issue of "whether [an insurance agency] had a duty to advise [an insured] regarding the adequacy of the *amount* of her automobile coverage." *Id.* at 38 (emphasis in original). In fact, the Maryland Court of Special Appeals in *Sadler* was careful to distinguish its decision from the Court of Appeals's holding in *Popham,* which also arose from an automobile accident and presented a similar legal question. The plaintiffs in *Popham* were an injured passenger and her father. The passenger was an additional insured on two insurance policies. The first policy, a family automobile insurance policy, provided liability and uninsured motorist ("UIM") coverage in the amount of $100,000/$300,000. There was also an excess or umbrella personal liability insurance policy with a limit of $1,000,000. The umbrella policy did not contain UIM coverage, although a Maryland statute allowed, but did not require, "the excess insurer to offer uninsured motorist coverage." *Popham,* 634 A.2d at 36. The plaintiffs alleged that the insurer and its agent were negligent in failing to afford an opportunity to contract for the excess UIM coverage. The Maryland Court of Appeals held that "the plaintiffs stated a claim for negligence, based on the defendants' alleged failure to advise the insureds of the option to purchase UIM coverage in an amount equal to the coverage provided under the excess liability policy." [9] *Sadler,* 776 A.2d at 39. The Court

---

9. The Maryland Court of Appeals in *Popham* emphasized the fact that the insurer actually offered optional UIM coverage policies. The facts here fulfill this condition with respect to Associated. Because "Associated was free to solicit business from other insurers[,]" it could offer liquor liability coverage although "Harford was not authorized to sell liquor liability coverage in the District" during the

of Appeals explained that "a trier of fact could conclude that [the insurance agent] failed to exercise the requisite skill and care of an insurance agent . . . ." *Popham*, 634 A.2d at 38.

A recent Maryland case confirms the limited applicability of *Sadler*. In *Cooper v. Berkshire Life Insurance Company*, the Court of Special Appeals of Maryland articulated an insurance broker's duty:

> "An agent, employed to effect insurance, must exercise such reasonable skill and ordinary diligence as may fairly be expected from a person in his profession or situation, in doing what is necessary to effect a policy, *in seeing that it effectively covers the property to be insured*, in selecting the insurer and so on."

148 Md.App. 41, 810 A.2d 1045, 1069 (2002) (quoting *Lowitt v. Pearsall Chem. Corp. of Md.*, 242 Md. 245, 219 A.2d 67 (1966)) (emphasis added). Citing *Sadler*, the Court of Special Appeals noted what appears to be the lone exception to this definition: the duty "does not extend to the obligation to advise the purchaser regarding the adequacy of the *level* of coverage on her liability insurance, in the absence of a special relationship or a request to do so." *Id.* at 1069 n. 6 (emphasis added).

*Popham* is more similar than *Sadler* to the instant case. To the extent these two cases are at odds, *Popham* would control as a decision issued by the highest tribunal in Maryland. Don Juan asserts that Associated failed to advise the restaurant about a form, as opposed to an amount, of coverage—*i.e.*, liquor liability insurance.[10] This

was essentially the claim in *Popham*, as the excess UIM coverage was deemed "an optional component of the umbrella policy itself[,]" and not an issue of the amount of coverage. *Sadler*, 776 A.2d at 39 ("The *Popham* case did not concern an allegation that the agent failed to advise the insured about what amount of coverage was appropriate, or the cost of additional insurance."). As such, *Popham* instructs that the question of whether Associated was negligent by not informing Don Juan about liquor liability coverage is best resolved by having the trier of fact determine whether Associated met the applicable standard of care for insurance agencies in the District of Columbia.

Case law from the District of Columbia indicates that local courts would decline to modify the general duty of care, as described in *Cooper*, it is unlikely that the D.C. Court of Appeals would adopt a bright-line rule that an insurance agency cannot, as a matter of law, be held liable in tort for failing to advise an insured about types of coverage (absent a special relationship). To the contrary, D.C. courts impose a heightened duty on those working in the insurance industry. In *Morrison v. MacNamara*, the D.C. Court of Appeals remarked that an insurance agent is a "professional" who possesses "specialized knowledge and skill[.]" 407 A.2d 555, 560 (D.C.1979). The D.C. Circuit has held that "[t]here can be no doubt that an insurance agent may have affirmative duties to his clients." *Aetna Casualty & Surety Co. v. Walter Ogus, Inc.*, 396 F.2d 667, 669 (D.C.Cir.1967). Clearly, then, an insurance broker in the District of Columbia is

---

relevant time period. Harford's Mem. in Supp. of Mot. for Summ. J. at 22, 23.

**10.** Associated argues that "*Sadler* is not limited to the amount of coverage. The court also referred to a duty to advise as to the nature and type of coverage . . . ." Reply of Def.[ ]

Assoc. Ins. Mgmt., Inc. to Opps. to Mot. for Summ. J. at 15. However, the Court of Special Appeals explicitly limited *Sadler* to the "amount of coverage" issue so that it would not run afoul of *Popham*. See *Sadler*, 776 A.2d at 39.

held to a higher standard than the average salesman and may be required in some instances to be proactive in assisting a client.

It appears that courts in the District of Columbia would continue to find that an insurance broker is under "a duty to perform with the reasonable skill and ordinary diligence which can be expected from a person in his profession." *Adkins & Ainley, Inc. v. Busada,* 270 A.2d 135, 137 (D.C.1970). As an insurance broker, Associated owed this duty to Don Juan. Therefore, a fact finder must determine what a reasonable insurance agency in the District of Columbia would have done under the circumstances here—*i.e.,* would a prudent agent or broker have informed Don Juan about the availability of liquor liability coverage? Whether Associated's particular interaction with Don Juan fulfilled this standard presents an open question at this juncture.[11] Both sides argue that they could introduce evidence as to how Associated's alleged conduct compared to the industry norm.

Associated's Motion for Summary Judgment will be granted in part and denied in part. The Saylab family's allegations against Associated will be dismissed. What remains of Don Juan's Cross Motion for Summary Judgment will be denied. Don Juan's cross claim against Associated cannot be resolved on summary judgment.

### C. Harford's Relationship with Associated

■ The last issue under consideration is whether Harford may be held liable for Associated's alleged negligence. Pursuant to the Court's Order, this is the subject of Harford's second Motion for Summary Judgment.[12] Harford and Don Juan agree that Associated acted in a dual capacity, although they differ as to the exact relationship Associated had with each. Harford characterizes Associated's role as follows: "As Associated solicits and places insurance on behalf of insureds, it falls within the definition of broker. Moreover, as Associated delivers policies, bills and collects premiums on behalf of insurers with whom [it has] agency agreements, including Harford, Associated is also an agent of Harford for those functions." Harford's Mem. in Supp. of Mot. for Summ. J. at 19 (citations omitted). Don Juan asserts that the Agency Agreement between Harford and Associated gave Associated "actual authority to bind Harford and write coverage for it." Mem. of Pts. & Auths. of Def. Don Juan Rest., Inc.'s Opp. to Def. Harford's Mot. of Dec. 19, 2003 for Summ. J. at 4.

The Court will dismiss the remaining allegations against Harford because that insurance company was not authorized in 1998–99 to underwrite liquor liability coverage in the District of Columbia. Harford's Mem. in Supp. of Mot. for Summ. J. at 23. Thus, even if Mr. Ferrufino had asked Associated about the scope of his insurance and had actively sought dramshop coverage for Don Juan, Harford could not have issued such a policy. *See generally Popham v. State Farm Mut. Ins. Co.,* 333 Md. 136, 634 A.2d 28, 37

---

11. Similarly, the issue of whether Don Juan was contributorily negligent in failing to read the Policy or to request coverage advice—a potential defense raised in Harford's Motion for Summary Judgment—should be decided by a trier of fact. The Court will not rule as a matter of law that Don Juan's claim against Associated is barred by contributory negligence.

12. Harford actually moves for summary judgment on several grounds, but Don Juan focuses its response on the arguments relating to agency. The other issues are deemed conceded or have been rendered moot by other parts of this Memorandum Opinion.

(1993) ("Th[e] determination [of whether there has been a breach of the duty of care] depends on upon the existence of evidence that [the insurance company] opted to offer [coverage].").

In addition, the Agency Agreement expressly limited the scope of the agency relationship and left much to the discretion of Associated:

> Agent is an independent contractor and, subject to requirements imposed by law, the terms of this Agreement and the Company's written rules and regulations, shall be free to exercise judgment and discretion with regard to the conduct of business as Agent for the Company. . . .
>
> Agent understands and agrees that he is not authorized or otherwise empowered to alter, amend or otherwise modify the written terms of the Company's policies of insurance or waive any conditions contained therein except as expressly agreed to by the Company. . . .
>
> [Agent is authorized to] [e]xercise exclusive and independent control of his time and the conduct of his agency.

Mem. of Pts. & Auths. in Opp. to Mot. of Def.[ ] Assoc. Ins. Mgmt., Inc. for Summ. J. Ex. 5. Don Juan concedes that "Harford didn't make recommendations or give instructions to Associated of what to discuss with a proposed insured, including amounts or types of coverage or the need for liquor liability insurance for restaurants serving alcohol." Mem. of Pts. & Auths. of Def. Don Juan Rest., Inc.'s Opp. to Def. Harford's Mot. of Dec. 19, 2003 for Summ. J. at 6.

Harford is not legally responsible for any negligence allegedly committed by Associated relating to the procurement (or lack thereof) of liquor liability coverage, a form of insurance that Harford did not offer. On that specific topic, Associated did not possess authority to bind Harford

and could not have been Harford's agent. Harford's Motion for Summary Judgment will be granted and Harford will be dismissed from this case.

## IV. Conclusion

For the reasons stated above, Harford's Motion for Partial Summary Judgment will be granted; Associated's Motion for Summary Judgment will be granted in part and denied in part; Harford's second Motion for Summary Judgment will be granted; Don Juan's Motion for Summary Judgment will be denied; and Harford's Motion to Strike will be denied as moot. Harford will be dismissed as a defendant in this lawsuit, and the Saylabs will be dismissed as plaintiffs. Remaining will be Don Juan's declaratory judgment claim against Associated alleging negligence for failure to advise about liquor liability insurance. Given the changes in the contours of this case, the Court will vacate the current trial date and convert the pretrial conference set for September 7, 2004, to a status conference. The parties' obligations under the Pretrial Order will be suspended pending the status conference.

A separate Order accompanies this Memorandum Opinion.

### *ORDER*

For the reasons stated in the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that [46] Harford's Motion for Partial Summary Judgment is **GRANTED.** It is

**FURTHER ORDERED** that [47] Don Juan Restaurant's Motion for Summary Judgment is **DENIED.** It is

**FURTHER ORDERED** that [54] Motion of Defendant[ ] Associated Insurance Management, Inc. for Summary Judgment

is **GRANTED** in part and **DENIED** in part. It is

**FURTHER ORDERED** that [55] Harford's Motion for Summary Judgment is **GRANTED.** It is

**FURTHER ORDERED** that [48] Harford's Motion to Strike is **DENIED** as moot. It is

**FURTHER ORDERED** that Harford Mutual Insurance Company is **DIS-MISSED** as a defendant. It is

**FURTHER ORDERED** that Malika, Mumtaz, Haydathaulla and Ahmad Saylab are **DISMISSED** as plaintiffs. It is

**FURTHER ORDERED** that the trial set to commence on October 4, 2004, is continued. The pretrial conference set for September 7, 2004, is converted to a status conference. The parties' obligations under [73] Pretrial Order are suspended pending the status conference.

**SO ORDERED.**