# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 18, 2011          Decided July 1, 2011

No. 10-7094

ANGEL MEDINA,
APPELLEE

v.

DISTRICT OF COLUMBIA,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:97-cv-00594)

*Mary L. Wilson*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellant. With her on the briefs were *Irvin B. Nathan*, Acting Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General. *Carl J. Schifferle*, Assistant Attorney General, entered an appearance.

*H. Vincent McKnight* argued the cause and filed the briefs for appellee.

Before: ROGERS, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Angel Medina is a captain with the Metropolitan Police Department ("MPD" or "Department"). Medina filed a ten-count complaint in the district court charging the District of Columbia with racial and ethnic discrimination, and retaliation against him because of a series of discrimination complaints he filed against MPD. Although the jury heard five of Medina's claims, it found for Medina on only one; it concluded MPD had unlawfully retaliated against him. The jury awarded Medina $90,000 on each of two theories of liability—one based on federal law and one based on the D.C. Human Rights Act. Because these dual awards amount to impermissible double recovery, we reverse the magistrate judge's order denying the District's motion for judgment as a matter of law.

I

As the facts underlying Medina's lawsuit are of little significance to our disposition, we give them only brief attention. Angel Medina, a Hispanic male, began serving as an MPD officer in 1985. After Medina applied for a promotion to lieutenant and was passed over, he filed discrimination charges with the D.C. Office of Human Rights alleging that MPD had promoted non-Hispanic officers whose performances on a promotion competency examination were inferior to his own. While the outcome of those charges has no relevance to this case, the charges are significant because they represent the first in a string of complaints filed by Medina with the Office of Human Rights and the Equal Employment Opportunity Commission, and—he alleges—the motive behind the District's later retaliation against him.

Medina rose through the ranks, ultimately becoming a captain. But Medina claimed that on three separate occasions he was the victim of further racial and ethnic discrimination and retaliation. First, Medina alleged that in 1994, shortly after his promotion to lieutenant, he was transferred from his post at Internal Affairs to street duties although another newly promoted officer—an African-American—was not similarly transferred.

Second, Medina alleged that between late 1997 and early 1998, MPD selected two Caucasian officers to serve in the Office of Internal Affairs instead of granting his request to be transferred back to that office.

Finally, in 2001, MPD suspended Medina without pay pending the resolution of unrelated criminal charges brought against him. According to Medina, MPD discriminated against him both in imposing an unnecessarily severe suspension and in failing to reinstate him to active duty within thirty days after his acquittal of criminal wrongdoing, as Department policy required.

As a result of these incidents, in 1997 Medina filed a complaint in the district court, alleging MPD violated the U.S. Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*, by discriminating and retaliating against him. Medina amended his complaint in 2002 to add the later incidents of alleged discrimination and retaliation. The District then moved to dismiss all ten counts of Medina's amended complaint.

The district court granted the District's motion to dismiss five of the ten counts and part of a sixth. The parties then consented to trial before a magistrate judge, and in the summer

of 2008, Medina's remaining claims finally reached a jury. At trial, Medina's evidence centered on the three specific incidents discussed above. The jury found for Medina on only one of his remaining five claims: Count V, which alleged the Department unlawfully retaliated against Medina when it failed to transfer him to Internal Affairs in 1997–98. The jury awarded Medina $90,000 on each of his liability theories, for a total award of $180,000. Specifically, the jury concluded MPD violated Medina's rights both under federal law and under the D.C. Human Rights Act.

After the entry of judgment in favor of Medina, the District moved for judgment as a matter of law, or alternatively, remittitur, claiming the jury improperly awarded Medina double recovery for the same injury. The magistrate judge denied the District's motion, explaining in pertinent part that there was no double recovery because Medina's federal law claims "spoke . . . to [his] rights under the United States Constitution to equal protection under the laws," while Medina's D.C. law claims protected his right "not [to] be subjected to retaliation for making complaints of discrimination." *Medina v. District of Columbia*, 718 F. Supp. 2d 34, 58 (D.D.C. 2010). The District now appeals.

II

We review the magistrate judge's denial of a motion for judgment as a matter of law *de novo*, but we acknowledge "'[w]e do not . . . lightly disturb a jury verdict.'" *Novak v. Capital Mgmt. & Dev. Corp.*, 570 F.3d 305, 311 (D.C. Cir. 2009) (quoting *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007)). We also review the underlying double recovery question *de novo* because the magistrate judge concluded double recovery was permissible as a matter of law.

*See Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011) ("[O]ur review of legal issues is *de novo*.").

The doctrine of double recovery dictates that "in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered." *Kassman v. American Univ.*, 546 F.2d 1029, 1033 (D.C. Cir. 1976) (quoting *Snowden v. D.C. Transit Sys., Inc.*, 454 F.2d 1047, 1048 (D.C. Cir. 1971)). The animating principle is simple: when a plaintiff seeks compensation for wrongs committed against him, he should be made whole for his injuries, not enriched. *Id*. For practical purposes, this means a party "cannot recover the same damages twice, even though the recovery is based on two different theories." *Bank One, Tex., N.A. v. Taylor*, 970 F.2d 16, 34 (5th Cir. 1992) (quoting *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987)). Thus, "[i]f a federal claim and a state claim arise from the same operative facts, and seek identical relief, an award of damages under both theories will constitute double recovery." *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1459 (10th Cir. 1997) (quoting *U.S. Indus., Inc. v. Touche Ross & Co*., 854 F.2d 1223, 1259 (10th Cir. 1988)). That said, a jury is not prohibited from allocating a single damages award between two distinct theories of liability. *See, e.g.*, *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) (upholding a jury award that apportioned damages between two causes of action).

In light of these principles, the question is whether Medina's damages award constituted impermissible double recovery, represented compensation for two distinct injuries, or reflected a single award apportioned between two theories of liability. But before we turn to the merits, we must address two preliminary inquiries. Both the parties and the magistrate judge had difficulty deciding which federal theory served as

the basis for Medina's award and defining the nature of the injury Medina suffered.

We begin with Medina's theories of recovery. In its opinion considering the District's post-trial motions, the magistrate judge states: "[T]he jury awarded plaintiff $90,000 [because the District] . . . violated Title VII of the Civil Rights Act." *Medina*, 718 F. Supp. 2d at 58. But in that same paragraph, the judge explains the jury question (Question 13) relating to that award, "was based on plaintiff's claim under the federal statute, 42 U.S.C. § 1983." *Id.* And in a subsequent paragraph, the judge indicates Medina prevailed on his § 1983 theory, referring to Jury Question 13 as a question that "spoke . . . to plaintiff's right under the United States Constitution to equal protection under the law." *Id.* Thus, on an initial read, it is entirely unclear whether Medina prevailed under § 1983, which provides a cause of action for constitutional violations, or Title VII.

But careful examination of the jury's verdict sheet confirms Questions 13–15 (relating to the federal claim on which Medina prevailed) implicate § 1983, not Title VII. Question 13 asks whether the District "denied [Medina] equal protection of the laws," which is consistent with Medina's § 1983 claim. *Compare* Jury Verdict Form, *reprinted in Medina*, 718 F. Supp. 2d at 54, *with* Dist. Ct. Docket No. 62, at 18–19 (Second Amended Complaint). And Question 14 asks whether the unlawful retaliation was caused by "a custom or practice" of the District, Jury Verdict Form, *reprinted in Medina*, 718 F. Supp. 2d at 54, an inquiry relevant to a § 1983 claim, *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) ("policy or custom"); *see also Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). By contrast, Questions 10 and 11 ask whether the selection of a Caucasian officer instead of Medina was "an adverse employment action"

that was "substantially motivated" by Medina's national origin—classic Title VII terminology. Jury Verdict Form, *reprinted in Medina*, 718 F. Supp. 2d at 53–54; *see, e.g.*, *Forman v. Small*, 271 F.3d 285, 300 (D.C. Cir. 2001). Moreover, Count V of Medina's amended complaint is entitled "Retaliation in violation of 42 U.S.C. § 198[3] and the D.C. Human Rights Act for Failing to Transfer Plaintiff to [the Office of Internal Affairs]."[1] Dist. Ct. Docket No. 62, at 18 (Second Amended Complaint). Thus, it is evident from Medina's pleadings that he too considered his federal claim as one arising under § 1983. In light of the jury verdict form and Medina's amended complaint, we conclude the jury predicated Medina's federal law recovery on § 1983.[2] Because Medina recovered on two theories of liability, however, it is necessary to determine what injury or injuries each theory compensated.

Apparently, the magistrate judge believed Medina's injuries were synonymous with the deprivation of his rights, *see, e.g.*, *Medina*, 718 F. Supp. 2d at 58 ("[Questions 16–18]

---

[1] Medina's complaint actually alleged violation of 42 U.S.C. § 1981, but prior to trial, both parties stipulated that the proper authority for Medina's claim is § 1983.

[2] For purposes of this appeal only we assume without deciding that Medina could have recovered on a § 1983 claim alleging retaliation in violation of the Equal Protection Clause. *But see Teigen v. Renfrow*, 511 F.3d 1072, 1085–86 (10th Cir. 2007); *Thomas v. Independence Twp.*, 463 F.3d 285, 298 n.6 (3d Cir. 2006); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005); *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999); *Watkins v. Bowden*, 105 F.3d 1344, 1354–55 (11th Cir. 1997); *Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996); *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996). Because the District did not raise this issue, it is not properly before us on its merits.

were based on the D.C. Human Rights Act and spoke not to plaintiff's right under the United States Constitution to equal protection under the law, as did Question 13, but to his rights under District of Columbia Human Rights Act not be subjected to retaliation for making complaints of discrimination."), a theory Medina himself adopted on appeal, *see* Appellee's Br. at 11–13. But we think the simplest way to pinpoint the injury Medina suffered is by looking at his complaint. In Count V, which alleged both federal and D.C. law theories of liability, Medina claims that as a result of the District's legal violations, he suffered "emotional distress and humiliation." Dist. Ct. Docket No. 62, at 19, ¶ 114 (Second Amended Complaint). Leaving aside the question of whether—as the magistrate judge assumed—Medina could have characterized his injuries as the denial of equal protection and the denial of his right to be free from retaliation, we note that Medina did not do so. In other words, Medina did not claim the denial of federal and D.C. law rights was, in and of itself, his injury. Rather, he claimed it was the denial of these rights that caused his single injury of "emotional distress and humiliation." *Id.* Moreover, the magistrate judge instructed the jury to compensate Medina under § 1983 for any "actual pain, suffering and emotional distress . . . he endured as the direct result of any constitutional deprivation he may have suffered," Trial Tr. at 95 (July 24, 2008), *reprinted at* Joint Appendix ("J.A.") 368, but similarly instructed the jury to compensate Medina under the D.C. Human Rights Act "for emotional pain, suffering, inconvenience and mental anguish . . . caused by the [District's] retaliation," *id.* at 104, *reprinted at* J.A. 377. Thus, it is clear Medina alleged only one injury.

With these two questions answered, our task is markedly simplified. The only question remaining is whether Medina recovered twice for the same injury. We conclude he did. The magistrate judge held as a matter of law Medina could recover

under both D.C. law and federal law theories. *Id*. at 96, *reprinted at* J.A. 369 ("I have concluded as a matter of law that [Medina] may [succeed under both the D.C. law and federal law theories] and you [the jury] are not to concern yourself with that question at all or worry about double recovery."). It seems the magistrate judge believed the double recovery inquiry turned not on the injuries Medina suffered but on the source of law giving rise to the cause of action. *See Medina*, 718 F. Supp. 2d at 58 ("Thus, contrary to defendant's claim that plaintiff recovered twice upon the same theory of retaliation, plaintiff actually recovered once under a federal statute and once under a District of Columbia statute."). But this is incorrect. As we explained earlier, "[i]f a federal claim and a state claim arise from the same operative facts, and seek identical relief, an award of damages under both theories will constitute double recovery." *Mason*, 115 F.3d at 1459 (quoting *U.S. Indus.*, 854 F.2d at 1259). Medina's D.C. law and federal law theories of retaliation arose from the same facts (MPD's failure to transfer him to Internal Affairs) and sought identical relief (compensation for emotional distress and humiliation). That Medina presented both D.C. law and federal law theories to prove his case does not alter this conclusion.

Medina can prevail under these facts only if the jury intended to award him $180,000 for a single injury and allocated that amount between Medina's two theories of liability. Although Medina failed to make this argument, even if he had, it would be unsuccessful. The magistrate judge explicitly instructed the jury not to concern itself with double recovery because he had concluded "as a matter of law" that Medina could recover under both his federal law and D.C. law theories. Trial Tr. at 96 (July 24, 2008), *reprinted at* J.A. 369. In light of this statement, we cannot presume the jury intended to compensate Medina $180,000 for a single injury without regard to the multiplicity of theories pled.

Nor can Medina rely on *Martini v. Federal National Mortgage Association*, 178 F.3d 1336 (D.C. Cir. 1999). In *Martini*, Elizabeth Martini sued her employer, Fannie Mae, for sexual harassment and retaliation in violation of Title VII and the D.C. Human Rights Act. Based on violations of both statutes, the jury awarded Martini more than $6 million dollars, with punitive damages comprising a substantial portion of that award. *Id.* at 1339. Fannie Mae then filed a motion for judgment as a matter of law, or alternatively, remittitur and a motion to amend judgment. The district court reduced the damages award, but Fannie Mae nonetheless appealed. Martini cross-appealed, raising several arguments to preserve her award. *Id.* at 1340. In considering whether Martini's damages were in excess of Title VII's statutory cap, we concluded the district court should have reallocated the excess damages to Martini's award under District of Columbia law. *Id.* at 1349–50. We reasoned that because the jury had no legal basis for distinguishing between the two theories, Title VII's cap did not bar reallocation of the excess award under the D.C. Human Right Act. *Id.* In so holding, we recognized that Title VII does not relieve an employer of liability for its state-law violations. *Id.*

At first blush, *Martini* might suggest that a plaintiff may recover twice for the same injury under both state law and federal law theories. But *Martini* is distinguishable. Significantly, *Martini* involved an award of both compensatory and punitive damages, while Medina received compensatory damages only. Punitive damages, unlike compensatory damages, are not aimed at making a plaintiff whole; thus the rule against double recovery is inapplicable when the damages awarded are punitive. *Cf. Kassman*, 546 F.2d at 1033 ("[A] cardinal principle of law is that in the absence of punitive damages a plaintiff can recover no more than the loss actually

11

suffered." (quoting *Snowden*, 454 F.2d at 1048)). *Compare Mason*, 115 F.3d at 1460 ("[M]ultiple punitive damage awards on overlapping theories of recovery may not be duplicative at all, but may instead represent the jury's proper effort to punish and deter *all* the improper conduct underlying the verdict."), *with Dopp v. HTP Corp*., 947 F.2d 506, 517 (1st Cir. 1991) ("[T]he law abhors duplicative recoveries. That is to say, a plaintiff who is injured by reason of a defendant's behavior is, for the most part, entitled to be made whole—not to be enriched."). Furthermore, unlike with Medina's case, there is no indication the *Martini* jury intended Martini to recover twice for the same injury. It is just as plausible the jury intended to apportion a single damages award between both D.C. law and federal law theories. *See* 178 F.3d at 1349.

III

Because the jury's award amounted to impermissible double recovery, we reverse the magistrate judge's order denying the District's motion for judgment as a matter of law. We remand with instructions that the magistrate judge require Medina to accept a remittitur of $90,000, or in the alternative, a new trial.

*So ordered.*