FILED
United States Court of Appeals
Tenth Circuit

April 30, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LAURA RIDGELL-BOLTZ,

       Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner, United States Social
Security Administration,

       Defendant-Appellee.

No. 12-1495
(D.C. No. 1:10-CV-00252-RPM)
(D. Colo.)

**ORDER AND JUDGMENT***

Before **GORSUCH**, **McKAY**, and **ANDERSON**, Circuit Judges.

Plaintiff Laura Ridgell-Boltz brought this action against her employer, the

United States Social Security Administration ("SSA"), alleging violations of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII")

and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("ADEA").

The district court dismissed all but one claim alleging retaliatory discharge, for which

---

    * After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

a jury returned a $19,000 judgment in favor of Plaintiff. She now appeals the dismissal of her other claims, and exercising jurisdiction under 28 U.S.C. § 1291, we dismiss in part, reverse in part, and remand for further proceedings.[1]

I

Plaintiff is presently employed by the SSA as an Assistant Regional Counsel. Between January 2006 and November 2007, and while acting as a Special Assistant U.S. Attorney for the SSA, she was supervised by Yvette Keesee, the Deputy Regional Counsel, and Deana Ertl-Lombardi, the Regional Chief Counsel. During this time, Plaintiff believed that she and other women over the age of forty were being subjected to verbal abuse, heavier workloads, greater scrutiny, and higher performance standards than men and younger women in their office.

Underlying Plaintiff's belief was an incident in November 2006, when two other female attorneys, Debra Meachum and Teresa Abbott, both of whom were over forty, had their work highly criticized by Ms. Ertl-Lombardi and Ms. Keesee. At a meeting, Ms. Keesee so denigrated Ms. Abbott's work that Ms. Abbott ran out of the room feeling physically ill. Ms. Keesee then went to Ms. Abbott's office and forced her to revise her work for some eight hours. The next day, Ms. Meachum tried to speak to Ms. Keesee about the revisions, but Ms. Keesee rolled her eyes, laughed, and said she did not need to speak with her. Ms. Keesee then told Ms. Meachum to

---

[1] The SSA initially appealed the jury's adverse judgment but subsequently dismissed its appeal.

get out of her way as she left her office. Shortly thereafter, Ms. Keesee had a federal police officer remove Ms. Meachum from the building. Plaintiff saw the officer, spoke with Ms. Meachum immediately afterwards, and agreed to contact the SSA's equal employment opportunity ("EEO") counselor when Ms. Meachum told her what happened. Plaintiff contacted the EEO counselor later that day despite her own fears of retaliation.

Following this incident, Ms. Meachum and Ms. Abbott filed complaints of age and gender discrimination against the SSA. Both women identified Plaintiff as a witness who was being subjected to similar treatment. Indeed, Ms. Keesee frequently threatened to give Plaintiff poor performance reviews, place her on a performance improvement plan, and fire her. Ms. Keesee also told her she was not performing to her job-level and lacked interpersonal skills, while Ms. Ertl-Lombardi called her sloppy.

In July 2007, Ms. Keesee and Ms. Ertl-Lombardi accused Plaintiff of misconduct and making false statements in a court document. On August 1 of that year, Ms. Keesee placed Plaintiff on administrative leave, and on August 6, the U.S. Attorney's Office relieved Plaintiff of her duties based on the allegations made by Ms. Keesee and Ms. Ertl-Lombardi. On November 23, 2007, Ms. Ertl-Lombardi formally terminated Plaintiff from federal service.

The Merit Systems Protection Board ("MSPB") reinstated Plaintiff with back pay and associated benefits, along with interest, but it denied her claims of

discrimination and retaliation. *Boltz v. Social Security Admin.*, 111 M.S.P.B. 568 (July 9, 2009). Plaintiff then brought this action alleging a hostile work environment, wrongful discharge, and retaliation.[2]

Before trial, the district court dismissed the age-based claims, ruling that damages were not available under the ADEA. The case proceeded to trial on the remaining claims and at the close of Plaintiff's case in chief, the SSA moved for judgment as a matter of law. *See* Fed. R. Civ. P. 50(a). The district court granted the SSA's motion on the hostile work environment and discriminatory discharge claims, stating that "hostile means that it's so bad that no reasonable person would put up with it." Aplt. App., Vol. II at 715. Plaintiff objected, arguing that the correct legal standard was whether reasonable people would view the environment as hostile, not whether a reasonable person would tolerate it, but the court overruled her objection. The surviving retaliatory discharge claim went to the jury, which awarded Plaintiff $19,000.00 in damages.

Plaintiff then moved for a new trial, arguing that the court applied the wrong legal standard in entering judgment as a matter of law. Although the court

---

[2]    The complaint asserted a total of six claims, including two under the Privacy Act, 5 U.S.C. § 552(a), which were voluntarily dismissed and are not the subject of this appeal. The remaining counts consisted of two hostile work environment claims and two wrongful discharge claims, each based on age and gender discrimination and retaliation. On appeal, Plaintiff advances her hostile work environment claims primarily on a theory of age and gender discrimination, although there is an isolated reference to retaliation in the heading section of her opening brief. *See* Aplt. Br. at 23. We follow Plaintiff's lead and analyze her hostile work environment claim as predicated purely on age and gender discrimination.

acknowledged it had applied the wrong legal standard, it denied a new trial, ruling that Plaintiff still failed to show "that she was discriminated against because of her sex and that the discrimination was sufficiently severe or pervasive such that it altered the terms [or] conditions of her employment and created an abusive working environment." *Id.*, Vol. I at 43. This appeal followed.

## II

### A. ADEA

At the outset, the SSA contends that Plaintiff's age-based claims are moot because she has already been reinstated with back-pay and associated benefits. We review de novo whether the claims are moot, *see Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122-23 (10th Cir. 2010), and agree they are.

"The broad purpose of the ADEA is to insure that older individuals who desire work will not be denied employment." *Bruno v. Western Elec. Co.*, 829 F.2d 957, 967 (10th Cir. 1987). To this end, the ADEA provides for legal and equitable relief, including reinstatement, back-pay, and other pecuniary benefits associated with the job, but it does not permit the recovery of compensatory damages. *See* 29 U.S.C. § 633a(c) (authorizing civil actions for "legal or equitable relief"); *Villescas v. Abraham*, 311 F.3d 1253, 1260 (10th Cir. 2002) ("Congress had another opportunity to enlarge the remedies available under the federal employee ADEA when it amended Title VII and other Acts in the Civil Rights Act of 1991 to permit compensatory damages, subject to caps, and it conspicuously chose not to do so for ADEA

claims."); *Collazo v. Nicholson*, 535 F.3d 41, 44-45 (1st Cir. 2008) ("[T]he [ADEA]

does not allow compensatory damages for pain and suffering . . . [but permits

recovery] for only those pecuniary benefits connected to the job relation, including

unpaid wages or overtime compensation." (citations and internal quotation marks

omitted)).  Because Plaintiff has already obtained all the relief available to her under

the ADEA, those claims are moot.[3]

   *B.  Wrongful Discharge*

   The SSA also contends that Plaintiff's claim for wrongful discharge based on

age and gender discrimination is moot because she was awarded damages on her

claim of retaliatory discharge.  According to the SSA, she has been compensated for

her wrongful termination and any additional damages for that injury, regardless of

the theory of liability, would constitute an impermissible double recovery.  We agree.

   "It is well established that 'double recovery' is precluded when alternative

theories seeking the same relief are pled and tried together."  *Mason v. Okla.*

*Turnpike Auth.*, 115 F.3d 1442, 1459 (10th Cir. 1997), *overruled on other grounds by*

*TW Telecom Holdings Inc. v. Caroline Internet Ltd.*, 661 F.3d 495, 497 (10th Cir.

2011).  A jury may allocate a single damages award between two distinct theories of

---

[3]    In her reply brief, Plaintiff contends that she could still obtain equitable relief, including a letter from her employer explaining that its previous accusations were unfounded.  This argument is waived, however, because it was not advanced in the district court, nor does it appear in Plaintiff's opening brief.  *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) ("[A] party waives issues and arguments raised [in a reply brief] for the first time.").

liability, but "in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered." *Medina v. Dist. of Columbia*, 643 F.3d 323, 326 (D.C. Cir. 2011) (internal quotation marks omitted).

Plaintiff concedes that "she may not recover the same damages for alternative theories for her termination." Reply Br. at 8. Yet she contends the jury could have considered alternate theories in making a single damages award. That may be, but she sought relief for only one injury and she has now been compensated for that injury. Thus, without punitive damages, any additional award for her wrongful discharge would confer a double recovery for the same injury. *See Medina*, 643 F.3d at 329-30 (reversing two damage awards based on alternative theories of liability for one injury). The claim for age and gender-based discharge is thus moot.

*C. Hostile Work Environment*

This leaves Plaintiff's hostile work environment claim, which the district court dismissed under Fed. R. Civ. P. 50(a). Overruling Plaintiff's objection, the court asked her attorney what motivated the hostile conduct. Counsel answered, "[g]ender discrimination," to which the court replied, "I disagree. Your evidence isn't good enough." Aplt. App., Vol. II at 715. After briefly debating the applicable Title VII standard, the court granted the SSA's motion for judgment as a matter of law.

We review de novo the district court's entry of judgment as a matter of law. *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007). "[S]uch a judgment is warranted only if the evidence points but one way and is susceptible to

no reasonable inferences supporting the party opposing the motion." *Id.* (quotation omitted). Under this standard, "the question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which the jury could properly find for that party." *Owner-Operator Indep. Drivers Ass'n Inc. v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1191 (10th Cir. 2008) (brackets and internal quotation marks omitted). In conducting our review, "[w]e must view the evidence and any inferences to be drawn therefrom most favorably to the non-moving party." *Williams*, 497 F.3d at 1086 (quotation omitted).

To prevail on a gender-based hostile work environment claim, a plaintiff must show that she was discriminated against because of her gender and "that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Morris v. City of Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (internal quotation marks omitted). We evaluate "both objective and subjective components," asking "whether the plaintiff was offended by the work environment and whether a reasonable person would likewise be offended." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (internal quotation marks omitted). We also examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 958 (internal quotation marks omitted). "But severity and pervasiveness are not enough. The

- 8 -

plaintiff must produce evidence that she was the object of harassment *because of her gender.*" *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) (internal quotation marks omitted). Evidence of hostility directed at coworkers may support a hostile work environment claim if a plaintiff is aware of those incidents when she was allegedly subject to a hostile work environment. *See Williams*, 497 F.3d at 1095.

Plaintiff has marshalled enough evidence to get her claim before a jury. There was testimony that Ms. Keesee was "hot temper[ed]," "abusive," "profane," and "loud," and that she directed this behavior "primarily at the older female attorneys." Aplt. App., Vol. I at 427. The older female attorneys shared their similar treatment and lamented who happened to be targeted on any given day. Ms. Meachum testified that Ms. Keesee consistently referred to Ms. Abbott as a "weak bitch" and criticized her for "the man she was dating." *Id.* at 273. Ms. Keesee also spent 35 minutes screaming and using profanity at the top of her voice toward Carolyn Cooper, another female attorney over forty, because Ms. Cooper did not attend an out-of-work function. Ms. Keesee told her she was "spineless" and "a bad person" for not standing up to her husband, who apparently did not want her to attend the function. *Id.*, Vol. II at 621. Ms. Keesee then turned to Ms. Cooper's professional abilities, saying she "was a poor performer" and should not have been hired. *Id.* at 621-22.

There was also the episode when Ms. Ertl-Lombardi and Ms. Keesee severely criticized Ms. Meachum and Ms. Abbott for their work on a brief. Without fully reading the brief, Ms. Keesee mocked Ms. Abbott, refused to let her speak, and so

- 9 -

denigrated her legal skills that Ms. Abbott ran out of the meeting ready to vomit. A younger female attorney reported that afterwards Ms. Keesee came to her office making fun of Ms. Abbott, "saying, 'Can you believe how childish that was that she would—can you believe she almost threw up in my office.'" *Id.* at 704. Later that same day, Ms. Keesee went to Ms. Abbott's office to watch her revise the brief and positioned herself in such a way that Ms. Abbott "couldn't move unless [Ms. Keesee] took a break." *Id.*, Vol. I at 381. They stayed that night for some eight hours, until 8:00 p.m. When the other attorneys were leaving at 5:00 p.m., Ms. Abbott could hear them walking by her office. She described the experience, stating, "[I]t was almost as if . . . [Ms. Keesee was] bullying me and letting everybody know that she was in control of me, that I was going to be the puppet, and I wasn't going to do a thing without her permission." *Id.* at 384. And the next day, when Ms. Meachum tried to ask Ms. Keesee why they had revised the brief, Ms. Keesee had her removed from the building by a federal police officer. Plaintiff knew this and contacted the EEO counselor despite her own fears of retaliation.

There was also testimony that Ms. Keesee ridiculed Plaintiff, told her she lacked interpersonal skills, and threatened her with termination. There was testimony that Plaintiff was overloaded with work and so micromanaged that she could not complete her work. According to Plaintiff, she and the other older women were given more work and greater scrutiny than their male counterparts. Ms. Meachum confirmed that "the different treatment that [Ms. Keesee] gave to [the men] . . . was

startling." *Id.* at 267. Ms. Keesee frequently attended Plaintiff's oral arguments to observe her performance, and although Ms. Keesee stated that she also attended the arguments of Special Assistant U.S. Attorney, Tom Kraus, he denied that she ever did. Also, Ms. Meachum testified that as the lead Special Assistant U.S. Attorney, she knew Mr. Kraus was assigned two cases for every three assigned to herself and Ms. Abbott. Ms. Meachum asked to have her workload adjusted, but no action was taken on her request while Mr. Kraus had his workload reduced.

Additionally, Ms. Meachum said that Ms. Keesee would routinely chastise women at meetings. Ms. Abbott said she was embarrassed, humiliated, and ridiculed by Ms. Keesee. At one meeting hosted by Ms. Abbott, Ms. Keesee interrupted and announced that Ms. Abbott was disorganized and unprepared; she then walked out of the meeting with Ms. Ertl-Lombardi, leaving those in attendance to apologize and express their dismay at Ms. Keesee's behavior. Ms. Cooper had a similar experience, and at other meetings hosted by Ms. Meachum, the supervisors would roll their eyes, appear to be sleeping, and play on their Blackberries while whispering and giggling. They would disrupt the agenda and belittle or denigrate the older women in attendance. Any expression of dissent from the women would result in admonishments and additional work monitoring. Ms. Meachum testified that Ms. Keesee's admonishments became so prevalent that she "couldn't do [her] work without constant interruption. [She] couldn't complete a task without [Ms. Keesee] monitoring or denigrating whatever [she] was doing." *Id.* at 280. And as with

Plaintiff, Ms. Keesee told the other older women they lacked interpersonal skills, were not working to their grade level, would get poor performance reviews, and risked being put on a performance improvement plan or being fired. *See id.* at 109 (Plaintiff chastised for mistakes and frequently threatened with termination, being put on a performance improvement plan, or receiving a poor evaluation), *id.* at 281-82 (Meachum told she lacked interpersonal skills and was not performing to her grade level), *id.* at 385-86 (Abbott threatened with a poor evaluation, being put on a performance improvement plan, and termination), *id.*, Vol. II at 621-22 (Cooper told she was a poor performer, was not doing a good job, and should not have been hired).

Things grew worse for Plaintiff when the investigation began in Ms. Meachum and Ms. Abbott's discrimination complaints. Ms. Ertl-Lombardi and Ms. Keesee accused Plaintiff of professional misconduct and lying in a court document. The allegation of misconduct concerned a show-cause order entered in one of Plaintiff's cases. The U.S. Attorney's Office had planned to defend Plaintiff in the matter, but Ms. Keesee intervened and persuaded the U.S. Attorney's Office to change strategies, which left Plaintiff to provide her own defense. In a separate matter, Ms. Keesee accused Plaintiff of lying in a court document. Plaintiff had sought an extension of time to file a brief after the filing deadline and asserted she did not know the case had been reassigned to her, which her supervisors claimed to be untrue. This allegation predicated a charge of inappropriate conduct, which eventually led to her dismissal, reinstatement, and award of damages on the retaliatory discharge claim.

The male attorneys were not insulated from the harsh treatment, but the evidence indicates they did not experience the severity of treatment experienced by the older women. The men confirmed that Ms. Ertl-Lombardi and Ms. Keesee were micromanagers and that Ms. Keesee nitpicked their work. But the men were not berated at meetings when they were unprepared, nor did they face reprisal for expressing different opinions. While Ms. Keesee accused one male attorney of lying in a draft brief, she merely had a conversation with him about it. He testified that neither Ms. Keesee nor Ms. Ertl-Lombardi threatened to fire him or put him on a performance improvement plan. He also said they did not tell him that he lacked interpersonal skills or was working below his grade level. Ms. Keesee similarly accused Mr. Kraus of lying in a brief, but rather than terminate him, she required that he clarify the misrepresentation to the court. In still another matter, Mr. Kraus acknowledged he had mischaracterized a court filing once, but he said Ms. Keesee did not discover it. There was also testimony that Ms. Keesee yelled at men, including Mr. Kraus, who raised his voice as well, yet she did not have him removed by a federal police officer. And the one time she had Mr. Kraus revise his work in her presence, she stayed for only one hour, not eight. Moreover, this happened after Plaintiff, Ms. Meachum, and Ms. Abbott filed their discrimination complaints.

Finally, there was evidence that Ms. Keesee was "very polite [and] interactive" with the men, *id.*, Vol. I at 426, but directed her rude and intimidating behavior "primarily at the older female attorneys," *id.* at 427. Another female attorney who

was younger than forty confirmed that Ms. Keesee was "especially hard" on "women over forty." *Id.*, Vol. II at 705. And a female paralegal stated that Ms. Ertl-Lombardi was rude to the older women but would laugh and joke with the men. *Id.* at 536-37. She similarly stated that Ms. Keesee tried to intimidate people and was rude to women but not men. *Id.* at 538.

This testimony could lead a jury to properly conclude that Plaintiff was subjected to a hostile work environment on account of her gender. Therefore, viewing the reasonable inferences in favor of Plaintiff as the non-moving party, the evidence does not point "but one way," *Williams*, 497 F.3d at 1086 (internal quotation marks omitted). Although we express no opinion on the merits of Plaintiff's hostile work environment claim, we conclude the district court erred in entering judgment on it as a matter of law.

III

Plaintiff's appeal from the dismissal of her age-based claims under the ADEA is dismissed as moot, as is her appeal from the dismissal of her wrongful discharge claims. The district court's dismissal of her Title VII hostile work environment claim is reversed, and the case is remanded to the district court for further proceedings consistent with this order and judgment.

Entered for the Court


Monroe G. McKay
Circuit Judge

- 14 -