[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

Nos. 22-10211, 22-13144

Non-Argument Calendar

————————————————

RAVI KADIYALA, individually, and as the assignee of
Credit Union Mortgage Utility Banc, Inc.,

                              Plaintiff-Counter Defendant-
                              Appellee-Cross Appellant,

CREDIT UNION MORTGAGE UTILITY BANC, INC.,
an Illinois corp.,

                              Plaintiff-Counter Defendant-
                              Appellee,

*versus*

MARK JOHN PUPKE,
MARIE MOLLY PUPKE,

2                         Opinion of the Court                    22-10211

Defendants-Counter Claimants-
Appellants-Cross Appellees,


THE FLAGER GROUP AND ASSOCIATES,
a Florida sole proprietorship,
JOHN P. MILLER,
individually, CPA, PA, a Florida Corporation,
d.b.a. JOHN P. MILLER,
NICOLE ELLERSTEIN,
a.k.a. NICOLE AUGUSTE JACK,


Defendants.


————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:17-cv-80732-KAM

————————————

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

     This is an action alleging fraud in connection with the purchase of a substantial interest in Euro International Mortgage, Inc. ("Euro"), a mortgage company. The purchaser, Ravi Kadiyala, claims that, after the sale, he learned that the company's key asset,

an "Eagle" lending designation from the Department of Housing and Urban Development ("HUD"), had been obtained by fraud, and he sued the sellers, Mark and Marie Pupke, for damages.

After a seven-day trial, a federal jury found in favor of Kadiyala on his claims against Mark for fraud and on his claims against Marie for conspiracy to commit fraud and aiding and abetting. In accordance with the verdict form, the jury assessed damages individually with respect to each of the three claims. The form did not ask the jury to provide an overall damages figure. For the fraud claim against Mark, the jury awarded $500,000 in compensatory damages and $1,000,000 in punitive damages. For the conspiracy claim against Marie, the jury awarded $250,000 in compensatory damages and $250,000 in punitive damages. And for the aiding-and-abetting claim, the jury awarded $250,000 in compensatory damages and $250,000 in punitive damages. Combined, these figures resulted in a total award of $1 million in compensatory damages and $1.5 million in punitive damages.

Post-trial, the district court granted the Pupkes' motion under Rule 50, Fed. R. Civ. P., to reduce the damages award as duplicative. The court reasoned that the compensatory damages assessed against Mark and Marie were duplicative because the claims were all based on the same fraud and the same injury. So the court permitted recovery for $500,000 in compensatory damages against Mark, with joint and several liability against Marie for up to $250,000. The court also reduced the punitive damages award against Marie from a total of $500,000 to $250,000, reasoning that

the two awards were based on the same conduct, so they were also duplicative.

Both the Pupkes and Kadiyala have appealed. The Pupkes argue, for the first time on appeal, that the jury's damages award cannot stand because Kadiyala failed to prove actual damages and relied solely on "speculation and conjecture" about future profits. For his part, Kadiyala maintains that the district court erred in reducing his damages as duplicative.

## I.

As to the Pupkes' appeal, we cannot grant any relief because the Pupkes never properly raised a challenge to the sufficiency of the damages evidence before the district court.[1]

To preserve an evidentiary sufficiency challenge in a civil case, the party must comply with Rule 50, including filing a post-verdict motion for judgment as a matter of law under Rule 50(b) or a new trial under Rule 59. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400–01 (2006) (quotation marks omitted). If a party fails to make an appropriate post-verdict motion, we have "no

---

[1] Even assuming we had the power to consider this newly raised argument, we would review it only under the plain-error standard, which "rarely applies in civil cases." *Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011). And generally, we will grant relief in a civil case under this standard only when necessary to prevent "a miscarriage of justice." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017) (quotation marks omitted). This is not a rare case where invoking the plain-error doctrine is necessary to prevent a miscarriage of justice.

authority" to consider its challenge to the sufficiency of the evidence. *Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 451 F.3d 1300, 1302 (11th Cir. 2006); *see Unitherm*, 546 U.S. at 404 ("[R]espondent's failure to comply with Rule 50(b) forecloses its challenge to the sufficiency of the evidence.").

Because the Pupkes "never sought a new trial" or a directed verdict based on insufficiency of the damages evidence, they "forfeited [their] right to do so on appeal." *Unitherm*, 546 U.S. at 404.

## II.

As to Kadiyala's cross-appeal, "we review a district court's determination regarding duplicative damages for clear error." *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1200 n.17 (11th Cir. 2009).

Ordinarily, "[t]he jury enjoys substantial discretion in awarding damages within the range shown by the evidence, and . . . its verdict does not fail . . . so long as a rational basis exists for the calculation." *United States v. Sullivan*, 1 F.3d 1191, 1196 (11th Cir. 1993). Federal courts have "no general authority to reduce the amount of a jury's verdict." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1329 (11th Cir. 1999).

But courts do have the power and duty to prevent "double recovery." *St Luke's*, 573 F.3d at 1203. A plaintiff generally cannot be compensated for the same injury under different legal theories. *Id.*; *see Minotty v. Baudo*, 42 So. 3d 824, 833 (Fla. 4th DCA 2010) ("A double recovery based on the same elements of damages is prohibited." (quotation marks omitted)). Courts are therefore

empowered to reduce an award to ensure that a plaintiff does not receive more than his actual loss.  *See St Luke's*, 573 F.3d at 1203.

Nonetheless, "a jury is not prohibited from allocating a single damages award between two distinct theories of liability." *Medina v. Dist. of Columbia*, 643 F.3d 323, 326 (D.C. Cir. 2011).  In *Coquina Investments v. TD Bank, N.A.*, for example, the jury awarded the plaintiff $16 million in compensatory damages and $17.5 million in punitive damages each on two claims (aiding and abetting and fraudulent misrepresentation) based on the same Ponzi scheme.  760 F.3d 1300, 1306–07 & n.4 (11th Cir. 2014).  We summarily affirmed the court's refusal to reduce the award as duplicative, reasoning that it was clear from the record that "the jury intended a total of $32 million in compensatory damages and $35 million in punitive damages," which trial evidence of the plaintiff's total loss supported.  *Id.* at 1307 n.4, 1319.  Thus, a jury's award is not duplicative merely because "it allocated the damages under two different causes of action," *Gentile v. Cnty. of Suffolk*, 926 F.2d 142, 154 (2d Cir. 1991), so long as the jury intended that result and it is supported by the evidence at trial, *see Coquina*, 760 F.3d at 1319.

Here, the district court did not offer adequate grounds to justify reducing the total amount of damages that the jury awarded.  The court reasoned that the compensatory-damages awards against Mark and Marie were duplicative of one another because they were based on the same fraud and the same injury.  That alone is not enough, though, because the jury was not prohibited from allocating its total damages award between Mark and

Marie through the different causes of action. *See Coquina*, 760 F.3d at 1319; *Medina*, 643 F.3d at 326; *Gentile*, 926 F.2d at 154. Nothing in the verdict form or the court's instructions indicates that the jury did not intend to award Kadiyala a total of $1 million in compensatory damages. Nor did the court indicate that the total award exceeded Kadiyala's actual damages, which he claimed more than $10 million. *See Democratic Republic of the Congo v. Air Cap. Grp., LLC*, 614 F. App'x 460, 474 (11th Cir. 2015) ("[A] plaintiff may recover damages on two claims stemming from the same conduct if the total does not exceed actual damages."). So while we cannot rule out double recovery, we must conclude that the district court exceeded its limited authority in this context by reducing the total amount of compensatory damages reflected in the jury's verdict. *See St Luke's*, 573 F.3d at 1203; *Sullivan*, 1 F.3d at 1196; *Johansen*, 170 F.3d at 1329.

The issue of punitive damages is no different. The district court reasoned that the awards of $250,000 in punitive damages each for the conspiracy and aiding-and-abetting claims were duplicative because they were intended to sanction the same conduct. But nothing in the record suggests that the jury did not intend to award a total of $500,000 in punitive damages against Marie for her conduct. So just like with the issue of compensatory damages, the court lacked adequate grounds to reduce the award of punitive damages.

For these reasons, we vacate the district court's order reducing the damages awarded to Kadiyala as duplicative, and we

remand with instructions to enter judgment consistent with the verdict and this opinion.

### III.

In sum, we **AFFIRM** with respect to the Pupkes' appeal (No. 22-10211).  We **VACATE and REMAND**, with instructions, with respect to Kadiyala's cross-appeal (No. 22-13144).