Monte Carlos NAPOLEON, Appellant,

v.

Isom HEARD, Appellee.

No. 80–1431.

District of Columbia Court of Appeals.

Argued Dec. 7, 1982.

Decided Jan. 26, 1983.

Deborah Barthel, Washington, D.C., with whom Ellen Sudow, Washington, D.C., was on the brief for appellant.

John W. Perry, Bethesda, Md., with whom Rotraud M. Perry, Bethesda, Md., was on the brief for appellee.

Before NEWMAN, Chief Judge and KELLY and NEBEKER, Associate Judges.

NEWMAN, Chief Judge:

In this appeal we consider whether the trial court correctly granted a motion for summary judgment, barring a son convicted of the second-degree murder of his father from receiving the proceeds of his father's life insurance policy. We affirm, holding that a conviction of murder in the second degree precludes receipt of any insurance proceeds.

### I

On September 1, 1978, Monte Napoleon repeatedly stabbed his father and stepmother. His stepmother died several hours later and his father died on December 16, 1978. Following a jury trial in which he claimed self-defense, he was found guilty of second-degree murder while armed, of his father and stepmother. We affirmed the conviction on August 25, 1980. *Napoleon v. United States*, No. 79–1009 (D.C.1980) (Memorandum Opinion and Judgment).

On November 16, 1979, Metropolitan Life Insurance Co. initiated an interpleader action to determine whether the life insurance proceeds should go to Monte Napoleon or Isom Heard, the administrator of the estate. Frank Napoleon had failed to designate a beneficiary but the terms of the policy established a line of precedence under which the son and then the administrator of the decedent's estate were eligible for the proceeds.

1. This section is unchanged in the 1981 edition.

On February 11, 1980, Judge Taylor stayed the action, pending the outcome of the son's criminal appeal. On April 9, Judge Fauntleroy denied the administrator's Motion for Summary Judgment without prejudice to renew. On September 15, following the August 25, 1980 affirmance of the son's conviction, the administrator filed a Renewed Motion for Summary Judgment. This motion was granted without opinion and without oral argument by Judge Scott on November 25, 1980.

### II

■ D.C.Code § 19–320(a) (1973)[1] provides:

A person convicted of felonious homicide of another person, by way of murder or manslaughter, takes no estate or interest in property of any kind from that other person by way of:

(1) inheritance, distribution, devise, or bequest; or

(2) remainder, reversion, or executory devise dependent upon the death of the other person.

The estate, interest, or property to which the person so convicted would have succeeded or would have taken in any way from or after the death of the decedent goes, instead, as if the person so convicted had died before the decedent.

A conviction for murder in the second degree is sufficient to trigger the application of § 320(a). The statute does not specify "insurance proceeds" as an interest which a person convicted of murder is prevented from receiving. However, use of the phrasing "[t]he ... interest, or property ... which the person so convicted ... would have taken in any way from or after the death of the decedent ..." indicates that § 320(a) is to be interpreted broadly. Insurance proceeds fall well within the generic statement "interest or property."

One Superior Court case has interpreted § 320(a) as including a prohibition against

the distribution of insurance proceeds to the murderer of the insured. In *Barnes v. Metropolitan Life Insurance Co.,* 97 Wash.D.L. Rptr. 969 (D.C.Super.Ct. June 9, 1969), a husband acquitted in another proceeding of murdering his wife sought the proceeds of his wife's insurance policy. The court in this subsequent action reviewed the evidence de novo and found that the husband had indeed murdered his wife. Applying the established rule that an acquittal in a criminal case is not res judicata in a subsequent civil action, the court held that the husband was not entitled to the proceeds. The court noted, "[i]t is a well settled rule that a beneficiary of a life insurance policy who murdered or feloniously caused the death of the insured forfeits all rights to the proceeds of the policy. This rule, whether it be construed as one of public policy or of common law, dictates that no one should be allowed to benefit from his own wrong." *Id.* at 973. The court concluded that § 320 prohibited recovery of insurance proceeds by one who had feloniously killed the insured.

The enactment of § 320 did not repeal the common law. Indeed this section was a mere codification of the common law with changes in phraseology but not in the substantive law. Therefore reference to the common law to ascertain the applicability of § 320(a) to insurance proceeds is appropriate.

The common law supports the proposition that persons convicted of murdering an insured may not receive the proceeds from the policy. The leading case on this point is *Mutual Life Insurance Co. v. Armstrong,* 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997 (1886), in which the Supreme Court said:

> But, independently of any proof of the motives of Hunter in obtaining the [insurance] policy, and even assuming that they were just and proper, he forfeited all rights under it when, to secure its immediate payment, he murdered the assured. It would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had willfully fired.

*Id.* at 600, 6 S.Ct. at 881. Likewise in Maryland, the source of the District's common law and an especially persuasive authority when the District's common law is silent, those convicted of felonious homicide have been prevented from receiving insurance proceeds. *Chase v. Jenifer,* 219 Md. 564, 570, 150 A.2d 251, 255 (1959).

### III

In the District of Columbia, a person against whom a judgment has been rendered clearly establishing certain facts can not thereafter relitigate those same facts in a second legal action for a different purpose but turning on the same facts. This doctrine of collateral estoppel is applied in the District to prevent a person who has been convicted in a criminal action from relitigating the case. *United States v. Lima,* 424 A.2d 113, 116 (D.C.1980); *Ross v. Lawson,* 395 A.2d 54, 55–56 (D.C.1978). At issue here is whether Napoleon feloniously killed the insured, his father. A conviction of second-degree murder is sufficient evidence of a felonious homicide to trigger the application of collateral estoppel and prevent Napoleon from relitigating this issue.

### IV

Even if § 320(a) and the common law did not bar this claim, Napoleon's failure to oppose the Motion for Summary Judgment with appropriate submissions of evidence terminates his claim. In his Motion for Summary Judgment, the administrator placed before the Motions Court evidence that Napoleon had been convicted of second-degree murder. Napoleon here contends that the issues of whether he intentionally killed his father and whether he was insane at the time of the act remained to be litigated. However, he failed to comply with Super.Ct.Civ.R. 56 and provide additional evidence, by affidavits or otherwise, showing that such issues existed.

*Dewey v. Clark,* 86 U.S.App.D.C. 137, 140, 180 F.2d 766, 769 (1950). Consequently, the granting of the Motion for Summary Judgment was appropriate.

*Affirmed.*