**Robert Lewis TURNER, Appellant,**

v.

**TRAVELERS INSURANCE
CO., Appellee.**

No. 83–1209.

District of Columbia Court of Appeals.

Argued Jan. 10, 1985.

Decided Feb. 8, 1985.

John R. Miles, Upper Marlboro, Md., for appellant.

Douglas K. Spaulding, Washington, D.C., for appellee.

Before NEBEKER, FERREN and ROGERS, Associate Judges.

FERREN, Associate Judge:

Appellant seeks to recover the proceeds of a policy insuring the life of his wife and payable to him as beneficiary. The trial court denied recovery on the ground that appellant had been convicted of "felonious homicide" in the death of his wife, D.C. Code § 19–320(a) (1981), and accordingly could "tak[e] no ... interest" in the proceeds. *Id.* We affirm.

I.

A jury convicted appellant of involuntary manslaughter in the shooting death of Delories Turner.[1] At the time, Ms. Turner was insured under a group life insurance policy issued by Travelers Insurance Co. The policy designated appellant as the primary beneficiary and Chantreishia Turner, the couple's five-year-old daughter, as the contingent beneficiary. Travelers filed an interpleader complaint averring that it had "a duty to pay" the proceeds "to one of the two" beneficiaries and requesting a determination of the claimants' respective rights. Defendant-claimants Robert Turner and Chantreishia Turner both sought the proceeds.[2] The trial court granted Chantreishia Turner's motion for summary judgment. Noting that "Mr. Turner was convicted ... of involuntary manslaughter," the court ruled that D.C.Code § 19–320(a) "divests Mr. Turner of any interest in these insurance proceeds" because involuntary manslaughter is a "felonious homicide."

II.

Section 19–320(a) provides:

A person convicted of felonious homicide of another person, by way of murder or manslaughter, takes no estate or interest in property of any kind from that other person by way of:

---

1. Appellant was tried on charges of second-degree murder, voluntary manslaughter and involuntary manslaughter. Appellant defended on *the* ground that the shooting was accidental. The jury acquitted him of the first two charges but convicted him of involuntary manslaughter.

2. The parties before the trial court also included Metropolitan Life Insurance Co., intervenor plaintiff, and the Estate of Delories Andra Turner, intervenor defendant. These parties take no position on appeal.

(1) inheritance, distribution, devise, or bequest; or

(2) remainder, reversion, or executory devise dependent upon the death of the other person.

The estate, interest, or property to which the person so convicted would have succeeded or would have taken in any way from or after the death of the decedent goes, instead, as if the person so convicted had died before the decedent.

On appeal, appellant contends that § 19–320(a) is merely a "codification of the common law," *Napoleon v. Heard,* 455 A.2d 901, 903 (D.C.1983); that the common law of Maryland is the source of common law for the District of Columbia, D.C.Code § 49–301 (1981); and that Maryland common law prohibits a beneficiary who causes the death of an insured from receiving insurance proceeds only when the killing was both felonious and intentional. *Schifanelli v. Wallace,* 271 Md. 177, 315 A.2d 513 (1974). Appellant accordingly argues that Congress, in enacting § 19–320(a), did not intend to bar persons convicted of an unintentional felonious homicide, *i.e.,* involuntary manslaughter, from receiving insurance proceeds.

In the District of Columbia, voluntary and involuntary manslaughter are separate offenses indictable under the same statutory provision, D.C.Code § 22–2405 (1981).[3] Both are felonies. *See Henson v. United States,* 399 A.2d 16, 20 (D.C.) ("courts in this jurisdiction generally define 'felony' as any offense for which the maximum penalty provided for the offense is imprisonment for more than one year"), *cert. denied,* 444 U.S. 848, 100 S.Ct. 96, 62 L.Ed.2d 62 (1979). Both are killings without malice and without legal justification or excuse; however, voluntary manslaughter requires a general intent to do the act that caused death, whereas involuntary manslaughter is an unintentional killing derived from reckless or grossly negligent conduct. *See* Criminal Jury Instructions for the District of Columbia, Nos. 4.25 and 4.26 (3d ed. 1978); *see generally United States v. Bradford,* 344 A.2d 208 (D.C.1975).

The statute at issue here, D.C.Code § 19–320(a), plainly provides that anyone "convicted of a *felonious* homicide of another person, by way of … *manslaughter*" may take no "interest in property of any kind from that other person" in specified circumstances. (Emphasis added.) This court has construed § 19–320(a) to preclude anyone so convicted from receiving insurance proceeds on the life of the deceased. *Napoleon.* It accordingly follows from the plain wording of § 19–320(a)[4] that the statute bars persons convicted of involuntary manslaughter, a "felonious homicide," from taking certain property (including insurance proceeds) made available by the death. "[W]hen the language of a statute is clear and admits of no more than one meaning, we are not empowered to look beyond the literal words of the statute." *Nova University v. Educational Institution Licensure Commission,* 483 A.2d 1172, 1179 (D.C.1984) (citations omitted); *Haney v. United States,* 473 A.2d 393, 394 (D.C.1984) (citations omitted).[5]

**3.** D.C.Code § 22–2405 (1981) provides:
  Whoever commits manslaughter shall be punished by a fine not exceeding $1,000, or by imprisonment not exceeding 15 years, or by both such fine and imprisonment.

**4.** Although we need not look beyond the plain language of the statute, it is interesting to note that in 1965, when § 19–320 was originally enacted, the District of Columbia had a separate statute criminalizing "negligent homicide" and characterizing it as a misdemeanor. D.C.Code § 40–606 (1961). Thus, the criminal statutory scheme applicable to homicides at that time

buttresses our conclusion that § 19–320(a) was intended to draw a clear line between felony manslaughter and misdemeanor negligent homicide. Today, negligent homicide is also a felony. D.C.Code § 40–713 (Supp.1984).

**5.** While it is true that this court said in *Napoleon* that § 19–320(a) "did not repeal" and "was a mere codification of the common law," 455 A.2d at 903, the court was considering a second-degree murder case and focused only on the common law in that context. We conclude that, as to the issue in this case, the plain language of § 19–320(a) is in derogation of the common law

### III.

Appellant alternatively contends that D.C.Code § 19–320(b) (1981), rather than § 19–320(a), governs the disposition of insurance proceeds. Subsection 19–320(b) provides that "[p]olicies of insurance directly or indirectly procured by a person convicted as specified by subsection (a) of this section, for his own benefit or payable to him upon the life of the person killed by him, are void." In contrast, § 19–320(a) does not expressly address insurance proceeds; it speaks only of "property" received, for example, by "inheritance, distribution, devise, or bequest." Appellant therefore argues that if Congress had intended "insurance proceeds" to fall within the purview of § 19–320(a), it would have expressly said so. In sum, according to appellant, the structure of § 19–320 as a whole suggests that Congress intended only subsection (b) to address insurance proceeds; thus, because appellant did not "directly or indirectly procur[e]" the policy, he is not barred from recovery.

Appellant acknowledges, as he must, that this court has previously decided this very issue in *Napoleon*, 455 A.2d at 902, where we concluded that "[i]nsurance proceeds fall well within the generic statement 'interest or property'" for purposes of § 19–320(a). We agree with that decision and, in any event, are bound by it. *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971).

We would add that there is no inconsistency in applying both subsections 19–320(a) and 19–320(b) to insurance proceeds. The former merely proscribes persons convicted of felonious homicides from taking an "interest" in property payable as a result of the decedent's death, whereas the latter declares insurance policies procured by the convicted felon entirely void. In this case, for example, there is no reason to void the policy altogether since appellant did not procure it, and yet it does not necessarily follow that appellant, who killed his wife, should benefit from the proceeds.

*Affirmed.*

---

line traditionally drawn between voluntary and involuntary manslaughter. *See Schifanelli*, 271 Md. at 187, 315 A.2d at 519; *Chase v. Jenifer*, 219 Md. 564, 568, 150 A.2d 251, 254 (1959). Nor do different, though similar, statutes in other jurisdictions have a bearing here. *See Quick v. United Benefit Life Ins. Co.*, 287 N.C. 47, 213 S.E.2d 563 (1975) (statute barring recovery of insurance proceeds by persons convicted of "wilful and unlawful killing" does not apply to involuntary manslaughter; but recovery nonetheless precluded by common law principle that "no person shall be allowed to profit by his own wrong"); *Dowdell v. Bell*, 477 P.2d 170 (Wyo. 1970) (statute precluding beneficiary who "feloniously takes ... the life of [the insured]" from receiving insurance proceeds held no bar to beneficiary convicted of involuntary manslaughter).