# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 24, 2020        Decided February 16, 2021

No. 19-7108

JOHN N. XEREAS,
APPELLANT

v.

MARJORIE A. HEISS, ET AL.,
APPELLEES

Consolidated with 19-7111

Appeals from the United States District Court
for the District of Columbia
(No. 1:12-cv-00456)

*Brent M. Ahalt* argued the cause and filed the briefs for appellant.

*William T. O'Neil* argued the cause and filed the brief for appellees.

Before: TATEL, PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*:  Appellant John Xereas holds the RIOT ACT trademark, a well-known local comedy brand.  In 2010 he entered into a business agreement with Appellees Geoffrey Dawson and Marjorie Heiss ("Defendants") to open the Riot Act Comedy Club in downtown D.C.  After the relationship soured, Xereas brought suit to recover damages from Defendants' alleged breaches of fiduciary duty and of the operating agreement of the limited liability company the parties formed to start the club, as relevant here.  Defendants counterclaimed, and after extensive discovery the parties proceeded to jury trial in 2018.

Xereas challenges the District Court's dismissal of his claim for breach of the Defendants' fiduciary duties of loyalty and care on the pleadings, as well as a number of pretrial and trial errors.  Defendants cross-appealed and challenge the District Court's denial of their final motion for judgment as a matter of law and request for attorney's fees.  We reverse the District Court's dismissal of Xereas's breach of fiduciary duty claim.  We affirm the District Court's rulings in all other respects.

## I.

## A.

Xereas conceived the name "RIOT ACT" during his multi-decade career in the D.C.-area comedy scene.  He registered RIOT ACT-related domain names in 2005 and did business as RIOT ACT Entertainment LLC through 2012, booking comics and producing and promoting events at local venues including Lisner Auditorium, The Lincoln Theater, 9:30 Club, and DAR Constitution Hall.  Xereas obtained a trademark for RIOT ACT in September 2012, with a first use date of September 2005.

After his successful first club closed, Xereas met and agreed to go into business with Defendants Geoffrey Dawson and Marjorie Heiss. The parties hoped to leverage Xereas's experience running a comedy club and Defendant Dawson's capital and connections as a successful bar and restaurant owner. Defendant Heiss, the longstanding in-house counsel to Dawson's management company, joined the partnership as the LLC's attorney. The parties gave conflicting testimony at trial about their discussions regarding the use of the RIOT ACT trademark: Xereas says he told Defendants from the start that he would retain ownership and rights to the trademark, but would license it to the LLC and only charge a fee once the business began to make money. Defendants testified that Xereas agreed to contribute the RIOT ACT trademark to the LLC and that he never informed them that he expected the business to pay him a licensing fee.

In any event, no licensing agreement for the RIOT ACT mark was executed. The parties eventually leased a large event space in downtown D.C. zoned for a theater and arts venue and began renovations. Defendant Heiss registered their company as Riot Act DC, LLC and the parties executed an operating agreement in May 2010 and the operative Amended Operating Agreement ("the operating agreement") on November 1, 2010. Each party held a 33.33% stake in the LLC.

Xereas, Heiss, and Dawson were the sole Member-Managers of the LLC. The operating agreement gave the managing members "full and exclusive power and authority on behalf of the Company to manage, control, administer[,] and operate the business and affairs of the Company." Amended Operating Agreement, Art. VI § 6.1(a); *see also id.* Art. V § 5.10. In other words, all management decisions were controlled by a two-thirds vote of the Member-Managers. The operating agreement also provided that "[a]ny consideration to

be paid as salaries by the Company to the Managing Members shall be determined by the Managing Members in their reasonable discretion." *Id.* Art. VI § 6.4. The operating agreement also included a provision selecting the District of Columbia as the source of governing law. *Id.* Art. X § 10.9.

Xereas claims that the parties agreed to pay him $72,000 per year for his work as General Manager, but later deferred payments until the business became profitable. Trial Tr. 232:5–7. Defendant Dawson acknowledged that "[i]n a perfect world, he would have gotten his salary, which we had hoped would be $72,000 a year," but Dawson also testified that Xereas's salary was never guaranteed. Trial Tr. 616:24–617:16. Other management salaries were being paid, however. Xereas testified that Defendants paid another employee $65,000 per year to manage the club, and Defendant Dawson testified that the LLC paid a $100,000 management fee to one of his companies. Trial Tr. 235:13–17; 692:16–25. In the end, Xereas received $26,000 in the year and a half between May 2010, when the LLC was officially formed, and his exit in 2012.

The Riot Act club opened its doors in August 2011. Not long after, the relationship between the parties deteriorated. The Defendants voted to fire Xereas's brother and friend in January 2012, and a verbal conflict ensued after which Xereas left the premises. Xereas testified that he continued to work for the LLC despite Defendants' vote two days later to remove him from his day-to-day managerial responsibilities. Defendants cut off Xereas's access to his Riot Act-domain email and changed the locks at the club several days later. Defendants ultimately voted to remove Xereas as a managing member in March 2012, under the operating agreement's provision for removal of a manager for failure to devote time and effort to the business necessary to maintain its interests. Amended

Operating Agreement, Art. VI § 6.3. Xereas maintained his stake in the LLC, and currently owns a twenty-six percent share. After cutting ties with Xereas and executing a quit-claim deed to disavow any interest in the RIOT ACT trademark, Defendants re-registered as Penn Social, LLC but were unable to change the RIOT ACT mark on their liquor and occupancy licenses throughout the pendency of this litigation.

**B.**

Xereas filed the initial Complaint in this action in March 2012, bringing Lanham Act and related claims under District of Columbia law. The District Court exercised jurisdiction over Xereas's trademark infringement and other Lanham Act claims pursuant to 15 U.S.C. § 1121 and supplemental jurisdiction over the related District of Columbia law claims pursuant to 28 U.S.C. § 1367(a).

Xereas's Second Amended Complaint ("SAC") alleged twenty-six claims stemming from the parties' less-than-amicable breakup. Relevant for our purposes, the SAC included: a claim for breach of fiduciary duty, Lanham Act and common law trademark infringement claims; and interrelated contract claims based on the implied covenant of good faith and fair dealing, D.C. law, and the operating agreement. The Defendants cross-claimed based on the same conduct alleged in Xereas's Complaint, including, as relevant here, a conversion claim for a computer purchased by the LLC and retained by Xereas.

The case was referred to Magistrate Judge Deborah A. Robinson during discovery and referred to her for all purposes by the parties' consent in September 2017. The District Court decided the parties' cross motions for summary judgment and allowed Xereas's above-named claims, except for his claim for

breach of fiduciary duty, and all of Defendants' cross-claims to proceed. The District Court converted Defendants' motion into a Motion to Dismiss for the purpose of deciding Xereas's breach of fiduciary duty claim, and dismissed it under Federal Rule of Civil Procedure 12(b)(6).

Magistrate Judge Robinson presided over a seven-day jury trial from November 5 to 14, 2018. At trial, the District Court conducted *voir dire* of Xereas's sole expert witness, allowed the expert to testify to unsupported business expenses and a company valuation, and ruled his trademark damages testimony inadmissible. After the close of Xereas's evidence, Defendants moved for judgment as a matter of law, claiming that Xereas presented no evidence proving the damages element of his breach of contract and trademark infringement claims. The District Court granted the motion with respect to one trademark claim and denied the motion as to the breach of contract claims because it held the evidence could allow the jury to find that Xereas was not paid the agreed-upon salary. Defendants moved again for judgment as a matter of law at the close of trial, and the District Court granted the motion as to the remaining Lanham Act claims. Only Xereas's claim for breach of the operating agreement went to the jury.

The jury found for Xereas and awarded him $106,000 in damages. The jury also found for Defendants on their conversion claim and awarded the return of the computer. Following trial, Defendants re-moved for judgment as a matter of law, to alter or amend Xereas's damages to the amount claimed in his final pretrial statement, and for attorney's fees under the Lanham Act, 15 U.S.C. § 1051 *et seq*. After amending Xereas's damage award to $45,000 to conform with the damages he identified in his pretrial statement as arising from the breach of the operating agreement claim, the District Court entered judgment for both parties pursuant to the jury

verdict. Defendants' cross-appeal challenges the District Court's denial of their motion for judgment as a matter of law on Xereas's successful breach of contract claim and of their request for attorney's fees. The parties timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

**II.**

The District Court dismissed Xereas's claim that Defendants owed and breached their fiduciary duties of loyalty and care. Mem. Op. 30–31, ECF No. 188 (Oct. 5, 2018). To state a claim for breach of fiduciary duty under District of Columbia law, a plaintiff must allege facts sufficient to establish: (1) the defendant owed plaintiff a fiduciary duty; (2) a breach of that duty; and (3) proximate cause and injury to be inferred from those facts. *See Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 363 (D.C. 1984) (duty and breach); *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009) (proximate cause and injury). The District Court analyzed only the first prong and declined to reach the remaining elements after finding it "clear" that a "special confidential relationship transcending an ordinary business transaction" that would give rise to a fiduciary duty "did not take place" between the parties. Mem. Op. 31. Because this holding was error, we reverse and remand to the District Court for further proceedings.

Xereas also alleges that the District Court erred at trial when it improperly excluded evidence relevant to his contract claims that survived summary judgment; abused its discretion by limiting, and ultimately striking, his expert's testimony; and made numerous additional evidentiary rulings at trial that violated his substantial rights. Xereas has not shown that we should vacate the verdicts based upon any of these evidentiary rulings, particularly given the substantial deference we owe the

trial court on such issues. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). We consider both arguments in turn.

**A.**

We review "*de novo* the dismissal of a complaint for failure to state a claim, accepting [the] plaintiff's factual allegations as true and drawing all reasonable inferences in [the] plaintiff's favor." *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017). District of Columbia law governs claims arising out of the parties' operating agreement. D.C. CODE § 29-801.06 (2012); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (AM. L. INST. 1971); J.A. 1771. Xereas grounds his claim for breach of the fiduciary duties of loyalty and care in "[section] 29-804.09 of the DC Code and DC Common Law." Second Am. Compl. 93 (Count XXI), ECF No. 102 (Aug. 22, 2017). Under either theory, District of Columbia law provides that members of a member-managed LLC owe each other fiduciary duties of loyalty and care, and Xereas adequately alleged that Defendants entered into the Riot Act DC, LLC with him.[1]

We first note that section 29-804.09 applies only to Defendants' conduct beginning January 1, 2012: it was enacted in its current form under District of Columbia Official Code Title 29 Technical and Harmonizing Amendments Act of 2012, D.C. Law 19-210, effective March 5, 2013, but with an applicability date of January 1, 2012. *See* 59 D.C. Reg. 13280

---

[1] The operating agreement is somewhat unclear as to whether Riot Act DC, LLC is organized as a member-managed LLC or a manager-managed LLC, but Xereas urges and Defendants do not contest that the LLC is member-managed. *See* Appellant's Br. 18 n.2; Appellees' Reply 4, 5, 8 (consistently referring to the LLC's "managing members").

(Nov. 23, 2012); 60 D.C. Reg. 8436 (June 7, 2013); *see also* Office of the General Counsel, Council of the District of Columbia Legislative Drafting Manual 41–42 (2019) (explaining that an applicability date is "different than [a provision's] effective date" and may accelerate or delay implementation of new legislation). Because some of Defendants' alleged conduct occurred before January 2012, and Xereas failed to point us to any statute applicable before January 2012 specifying fiduciary duties between members of an LLC, we analyze his claim first under the District's common law and second under the statute.[2]

Turning to the common law, "[a] fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 584 (D.C. 2015) (quoting *Gov't of Rwanda v. Rwanda Working Grp.*, 227 F. Supp. 2d 45, 64 (D.D.C. 2002), *aff'd in part, remanded in part sub nom. Gov't of Rwanda v. Johnson*, 409 F.3d 368 (D.C. Cir. 2005)). Whether a fiduciary relationship exists is "a fact-intensive question, involving a searching inquiry into the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties." *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996) (quoting *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994)). District of Columbia courts have "addressed the fiduciary duty of loyalty in the corporate and partnership context[s]," but not in the specific context of a limited liability company. *Bolton*, 110 A.3d at 581. However, *Calomiris v. Calomiris*, 3 A.3d 1186 (D.C. 2010), suggests that

---

[2] The common law duties that were allegedly breached overlap with the statutory duties that apply to Defendants' actions after January 2012, so the distinction does not affect the outcome of our analysis.

an action for breach of fiduciary duty may lie between members of an LLC based on their status as members alone.

In *Calomiris*, one member of a family-held LLC brought claims against the LLC and his siblings for breach of contract and breach of fiduciary duty when the LLC refused to reimburse him for attorney's fees sought in connection with an earlier action on behalf of the LLC. *Id.* at 1188–89. The operating agreement contained an indemnification clause that the claimant argued entitled him to prevail on his breach of fiduciary duty claim should the LLC continue to violate the indemnification provision by refusing to reimburse him for the earlier action. *Id.* at 1194. Without evaluating the merits of his claim, the court ruled that the claimant had pled sufficient facts to entitle him to an award of fees under the clause. *Id.* at 1194–95. In analyzing the sufficiency of his complaint, the court noted, "[Claimant] sets forth his two causes of action and paragraphs which demonstrate how he satisfies the elements of those causes." *Id.* at 1195. The court thus allowed the claimant's breach of fiduciary duty claim to continue where it alleged an action arising out of the LLC's operating agreement, as Xereas does here.

While the *Calomiris* court allowed a well-pleaded claim for breach of fiduciary duty by one member of an LLC against another to survive a motion to dismiss, we acknowledge that it did not directly consider the question whether members of an LLC owe each other fiduciary duties by virtue of membership alone. *Id.* Fortunately, Maryland courts have considered a closely analogous question and held that "managing members of an LLC owe common law fiduciary duties to the LLC and to the other members based on principles of agency." *Plank v. Cherneski*, 231 A.3d 436, 450 (Md. 2020). We look to Maryland's common law because Maryland is "the source of the District's common law and an especially persuasive

authority when the District's common law is silent." *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C. 1983); *see also Interstate Fire & Cas. Co. v. Washington Hosp. Ctr. Corp.*, 758 F.3d 378, 383 (D.C. Cir. 2014). The *Plank* court relied on the Maryland Court of Special Appeals' decision in *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 14 A.3d 1193, 1210–11 (Md. Ct. Spec. App. 2011), *abrogated on other grounds by Plank*, 231 A.3d, which held that "fiduciary duties are not born of statutory language—the underlying fiduciary duties pre-exist the statutes" and "[t]he same holds true in the LLC context." Thus, since at least 2011, "especially persuasive authority" supports our reading of *Calomiris* to suggest that Xereas, Dawson, and Heiss, at once members and managers of the LLC, owed each other, as well as the LLC and any other members, fiduciary duties of loyalty and care. *Napoleon*, 455 A.2d at 903.

In his Complaint, Xereas alleged that he entered into the original operating agreement with Defendants on May 6, 2010 and further alleged that "Defendants Dawson and Heiss, by virtue of being managers of the LLC at the time most of the events that give rise to this Second Amended Complaint occurred, were in a fiduciary relationship with Plaintiff who was also a manager of the LLC." Second Am. Compl. ¶¶ 46, 177. We find these allegations sufficient under Rule 12(b)(6) to establish the existence of a fiduciary relationship under D.C. common law.

For those events that took place in 2012 and therefore also covered by the statute, Xereas correctly argues that section 29-804.09 provides that members of a member-managed LLC owe each other duties of loyalty and care, duties typical of a fiduciary relationship. *See* D.C. Code §§ 29-804.09(a)–(c); RESTATEMENT (THIRD) OF AGENCY § 8.01 (AM. L. INST. 2006); *see also Quincy Park Condo. Unit Owners' Ass'n v. D.C. Bd.*

*of Zoning Adjustment*, 4 A.3d 1283, 1290 (D.C. 2010) (referring to "the duties of loyalty and care imposed by law on a fiduciary"). Defendants urge that the "mere existence of a contract generally does not give rise to a fiduciary duty," and they collect cases standing for the proposition that only a relationship founded on trust and confidence that "transcends a normal business transaction" gives rise to a fiduciary relationship. Appellees' Br. 9–10 (internal quotation marks omitted). They argue that Xereas "presumed the special relationship" and pleaded only actions "entirely within the scope of the operating agreement." *Id.* at 10 (internal quotation marks omitted). Thus, resting on the twin premises that fiduciary relationships only arise when parties extend their relationship beyond the limits of their contractual obligations and that the operating agreement is a typical commercial relationship, Defendants argue no fiduciary relationship was established. *See id.*

But Defendants' authority aims to distinguish fiduciary relationships from arms-length contracts, not from business partnerships that give rise to duties owed by members or managers of a limited liability company, and does not alter our conclusion that the District of Columbia affords special status to the relationship between members of an LLC. *See, e.g.*, *Firestone*, 76 F.3d at 1207 (written agreement providing payment guarantees for past-due, court-ordered child support and spousal support); *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 6 (D.D.C. 2019) (health insurance policies); *Ying Qing Lu v. Lezell*, 919 F. Supp. 2d 1, 6 (D.D.C. 2013) (investor's escrow deposit); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 341–42 (D.D.C. 2011) (confidentiality and non-disclosure agreement signed by an intern as a condition of employment); *Command Consulting Grp., LLC v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 50 (D.D.C. 2009) (consulting services agreement); *Paul v. Judicial Watch,*

*Inc.*, 543 F. Supp. 2d 1, 4 (D.D.C. 2008) (legal representation agreement). And while it is true that District of Columbia courts "have traditionally looked for . . . a special confidential relationship that transcends an ordinary business transaction and requires each party to act with the interests of the other in mind," *Ying Qing Lu*, 919 F. Supp. 2d at 6 (internal quotation marks omitted), they have also suggested that membership in an LLC constitutes one such special relationship, *Calomiris*, 3 A.3d at 1195.

In sum, section 29-804.09 imposes duties characteristic of a special fiduciary relationship and requires members of an LLC to act with the interests of the LLC and other members in mind. *See* D.C. Code § 29-804.09(a) ("A member of a member-managed limited liability company *owes to the company and*, subject to § 29-808.01(b), *the other members the duties of loyalty and care* stated in subsections (b) and (c) of this section." (emphases added)); §§ 29-804.09(b)–(c) (requiring a member to "[a]ccount to the company," to "[r]efrain from dealing with the company . . . [with] an interest adverse to the company," and to "[r]efrain from . . . grossly negligent or reckless conduct, [and] willful or intentional misconduct"). And while we acknowledge that subsection (a) was amended in 2012 to remove the word "fiduciary" before "duties of loyalty and care," *compare* 58 D.C. Reg. 2065 (Mar. 11, 2011), *with* 59 D.C. Reg. 13244, section 29-804.09(i)(5) instructs that in a *manager-managed* LLC, "[a] member shall not have any fiduciary duty to the company or to any other member solely by reason of being a member." We therefore interpret the deletion of "fiduciary" as part of an effort to omit extraneous text, since a reading in which section 29-804.09(a) does not impose fiduciary duties upon members in a member-managed LLC renders subsection (i)(5) surplusage. That is, we doubt that the drafters would specify that members in a manager-managed LLC do not owe each other fiduciary duties

unless members owe each other such duties in another context. *See Nielsen v. Preap*, — U.S. —, 139 S. Ct. 954, 969 (2019) (explaining that "every word and every provision is to be given effect [and that n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (alteration in original and citations omitted)).

In light of the above, the District Court improperly found it "clear" that a "special confidential relationship transcending an ordinary business transaction did not take place" between the parties. *See* Mem. Op. 31. The District Court failed to consider relevant District of Columbia and Maryland law, the statute's clear imposition of duties of loyalty and care typical of a fiduciary, or the nature of the parties' relationship—as partners and co-managers in a business venture, not merely arms-length parties to a standard commercial transaction. Xereas's claim for breach of fiduciary duty should have, at a minimum, survived the pleading stage.

We hold that Xereas adequately alleged that he, Dawson, and Heiss were members of a member-managed LLC, Second Am. Compl. ¶ 362, and that under D.C. law that suffices to plead the existence of a fiduciary duty. For the reasons above, we reverse and remand this claim for further proceedings.

**B.**

Xereas has not, however, shown that we should reverse any of the District Court's evidentiary rulings, particularly given the broad deference we owe the trial court on such issues. *See Sprint/United*, 552 U.S. at 384. "[W]e review a trial court's evidentiary rulings for abuse of discretion and even if we find error, we will not reverse an otherwise valid judgment unless appellant demonstrates that such error affected [his] substantial

rights." *Bowie v. Maddox*, 642 F.3d 1122, 1134 (D.C. Cir. 2011) (alterations in original) (internal quotation marks omitted). For an error to affect a party's substantial rights, it "must have been prejudicial: It must have affected the outcome of the district court proceedings." *Muldrow ex rel. Estate of Muldrow v. Re–Direct, Inc.*, 493 F.3d 160, 168 (D.C. Cir. 2007) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). As the party claiming error, Xereas bears the burden of demonstrating harmfulness. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Xereas failed to carry his burden. To the extent his expert testimony was relevant to claims properly dismissed for other reasons, we find no prejudicial error. Nor do we find error where the District Court excluded Xereas's expert testimony regarding trademark damages because it did not comply with our decision in *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636 (D.C. Cir. 1982), to the extent that Xereas's challenge can even be understood to extend to that ruling. And conclusory statements that the trial court's remaining alleged errors "substantially prejudiced" Xereas do not demonstrate that each, or any, error altered the outcome of trial. *See, e.g.*, Appellant's Br. 24, 27; Appellant's Reply and Response to Cross Appeal 10, 18, 22. We decline to decide each evidentiary issue in turn. Instead, the trial court on remand should examine anew the previous rulings through the lens of the single remaining breach of fiduciary duty claim. Conscious that the District Court—faced with a different claim on remand—could determine that the new claim warrants different rulings, we decline to elevate its prior rulings to law of the case because evidentiary rulings are inherently situational. *See Sprint/United*, 552 U.S. at 387–88 (citing the Advisory Committee's note on Federal Rule of Evidence 401, 28 U.S.C. App. at 864, that "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an

item of evidence and a matter properly provable in the case"); 2 WEINSTEIN'S FEDERAL EVIDENCE § 401.04 (2020) (same). We remand a claim that has never been tried to the jury; in other words, the situation has changed, and so may the District Court's evidentiary rulings at any retrial.

We make one final note to guide the trial court on remand. It is well settled that a party "cannot recover the same damages twice, even though the recovery is based on two different theories." *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 241 (D.C. Cir. 2018) (Wilkins, J., concurring) (quoting *Medina v. District of Columbia*, 643 F.3d 323, 326 (D.C. Cir. 2011)), *cert. denied*, 139 S. Ct. 1201 (2019). Xereas's claim for breach of the operating agreement went to the jury, which found for him and awarded $106,000 in damages, later reduced by the District Court. As described above, the parties' agreement to enter into business and execution of the operating agreement gave rise to their fiduciary relationship, and the operating agreement helped define the contours of those fiduciary duties. *See, e.g.*, Amended Operating Agreement, Art. VIII. Xereas alleged lost earnings and lost proceeds to the LLC under both the breach of contract claim and his claim for breach of fiduciary duty. Second Am. Compl. ¶¶ 285, 373. To the extent the jury has already compensated him for Defendants' breach of the operating agreement, Xereas would not be entitled to a windfall of double damages from any second trial if a new jury, unaware of the prior award, assigns damages to cure the lost earnings he has already received. *See Hill*, 897 F.3d at 241. We leave it to the District Court on remand to ensure Xereas is not compensated twice for the same injury. *See Medina*, 643 F.3d at 326.

## III.

Turning to Defendants' cross-appeal, we affirm the District Court's decision to deny Defendants judgment as a matter of law on Xereas's breach of contract claim. We also affirm the denial of Defendants' fee petition for the reasons below.

## A.

"[W]e do not lightly disturb a jury verdict." *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 163 (D.C. Cir. 2015) (alteration omitted). We review the District Court's denial of a motion for judgment as a matter of law *de novo*. *Id.* "Judgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *Muldrow*, 493 F.3d at 165 (internal quotation marks and citation omitted). We cannot substitute our view for that of the jury, nor do we assess the credibility or weight of the evidence. *See Radtke*, 795 F.3d at 163.

Defendants argue that Xereas introduced insufficient evidence at trial to support his breach of contract claim because he failed to present evidence of damages caused by Defendants' breach of the operating agreement. Appellees' Br. 25. Under District of Columbia law, breach of contract requires a showing of: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by [the] breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Defendants strenuously urge that any salary paid or promised to Xereas was "discretionary" under the operating agreement. Appellees' Br. 27; *see also* Amended Operating

Agreement, Art. VI § 6.4. Under their theory, none of Defendants' breaching behavior, including removing Xereas as a managing member, could have caused him to lose a salary he was never entitled to. Appellees' Br. 27.

Xereas counters that he introduced evidence that Defendants agreed to pay him a salary of $72,000. Appellant's Reply and Response to Cross Appeal 25, 27. He argues that testimony describing the LLC's payment of similar salaries to a second general manager, as well as management consulting fees, allowed the jury to infer that he would have been compensated at a similar rate to that of general managers had he not been removed. *Id.* at 26–27. He further notes that he presented evidence that Defendants improperly removed him as a managing member in violation of the operating agreement, and that in light of the conflicting testimony presented at trial, "it was properly left to the jury to determine the weight of the evidence presented and the credibility of the witnesses." *Id.* at 25–26.

Xereas is correct: the evidence introduced at trial was not "so one-sided that reasonable men and women could not have reached a verdict in [his] favor." *Muldrow*, 493 F.3d at 165. Xereas testified that Defendants agreed to pay him a salary, and Defendant Dawson acknowledged that "[i]n a perfect world, he would have gotten his salary, which we had hoped would be $72,000 a year." *See* Trial Tr. 232:5–7; 616:24–617:9. But Defendant Dawson also testified that this salary was never guaranteed. Trial Tr. 617:10–16. Given the conflicting testimony, it is not our role to substitute our view for the jury's careful weighing of the witnesses' credibility and of the evidence. *See Radtke*, 795 F.3d at 163.

We note finally that Xereas's testimony that Defendants improperly removed him as a managing member suffices to

draw a causal link between the claimed damages and his removal. The operating agreement provides that "[n]o Member, as such, other than the Managing Members shall . . . [b]e paid any salary by the Company." Art. V § 5.10(c). If the jury evaluated the conflicting evidence and credited Xereas's testimony that he was to be compensated for performance of his management duties, his improper removal as a managing member eliminated his chance to recoup the salary owed. For the reasons above, we affirm the District Court's denial of Defendants' renewed motion for judgment as a matter of law.

**B.**

We also affirm the District Court's denial of Defendants' fee petition. Although Defendants are prevailing parties with respect to their Lanham Act claims, the District Court also based its denial on its view that this case is not "exceptional" as required to justify fees. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). We review the denial of Defendants' Post-Trial Motion for Attorney's Fees for abuse of discretion. *United States ex rel. Burke v. Record Press, Inc.*, 816 F.3d 878, 882 (D.C. Cir. 2016). Defendants have not convinced us that the trial court abused its "substantial discretion" in denying Defendants' fee petition. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993).

A party need not win judgment on every claim to be a "prevailing party." *Fox v. Vice*, 563 U.S. 826, 834 (2011). Because Defendants were granted judgment on the merits of all three of Xereas's Lanham Act claims, they were prevailing parties. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) ("[E]nforceable judgments on the merits . . . create the 'material alteration of the legal relationship of the parties'

necessary to permit an award of attorney's fees." (quoting *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989))). The District Court was incorrect when it stated, without explanation, that "Defendants have failed to demonstrate . . . that they are 'prevailing' parties." *See* Mem. Order 2, ECF No. 252 (Aug. 9, 2019).

However, no prejudice lies where the District Court did not abuse its wide discretion in determining that this case is not exceptional. *Id.* Analyzing an identical fee-shifting statute in the Patent Act, 35 U.S.C. § 285, the Supreme Court has stressed the discretion owed to district courts. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014). The Lanham Act's fee-shifting provision, like the Patent Act's, "emphasizes the fact that the determination is for the district court." *Id.* at 564 (citation omitted). Thus, we do not overturn it lightly.

Defendants contend that this case stands out based on the trial testimony, which they argue irrefutably showed that Xereas's claimed oral license to the LLC to use his RIOT ACT trademark was "a fiction." Appellees' Br. 31. In their view, the evidence showed that Xereas lied about granting an oral license to Defendants, referred to the LLC's ownership of the intellectual property, and applied for the mark only after granting the LLC the right to use it (and thus filed false statements with the Patent and Trademark Office). *Id.* at 31–32. Xereas responds that Defendants failed to establish that the District Court abused its discretion where his trademark infringement claims failed only because he did not introduce evidence of damages traceable to their infringing behavior, not because the evidence refuted his testimony that Defendants infringed his mark. Appellant's Reply and Response to Cross Appeal 32.

The District Court found that Defendants failed to show that the case was brought for the purpose of harassing them, or that Xereas's conduct was willful or in bad faith. Mem. Order 2. The Supreme Court has interpreted the Patent Act's identical fee-shifting statute broadly: "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Here the District Court exercised its substantial discretion to find that this case was neither litigated unreasonably nor brought to harass. Because district courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances," we decline to overturn the District Court's ruling here. *See id.*

## IV.

For the foregoing reasons, we reverse the District Court's dismissal of Xereas's breach of fiduciary claim and remand for proceedings consistent with this opinion. We affirm the District Court's rulings on both issues raised in Appellees' cross-appeal.

*So ordered.*